Roy Joseph TRAVIS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20187.

United States Court of Appeals
Ninth Circuit.

June 14, 1966.

Rehearing Denied June 29, 1966.

Certiorari Denied Oct. 10, 1966.
See 87 S.Ct. 179.

478

Joel J. Bellows, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, POPE and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge:

Roy Joseph Travis appeals from a judgment of conviction, and sentence, for a violation of section 2(c) of the Narcotic Drugs Import and Export Act, 70 Stat. 570 (1956), 21 U.S.C. § 174 (1964).

On February 11, 1965, shortly before sunset, Travis, travelling alone, landed a rented Canadian-registered "Mooney" aircraft at the airport in Yuba City, California. He had the airplane's gas tank filled, parked the aircraft "on the line," locked it, and left for town. A few minutes before 9:00 o'clock that night, federal narcotic agents and custom agents arrived at the airport. They placed the plane under surveillance, and between that time and 7:00 o'clock the next morning obtained a search warrant.

No one entered the plane while it was under surveillance. When Travis returned to the airplane that morning, the search warrant was served upon him. Producing a key, Travis unlocked the aircraft. Almost a pound of heroin, out of sight under the control panel, was found by the searching agent. An indictment was returned against Travis. His pretrial motions for suppression of the evidence and for a bill of particulars disclosing the identity of the informant were denied. The package of narcotics was received at the trial over his objection and the jury returned a verdict of guilty.

Travis argues that the described search and seizure violated his rights under the Fourth Amendment because the affidavit used in obtaining the search warrant was deficient in several respects. One particular in which the affidavit is insufficient, he contends, is the lack of an affirmative allegation of personal knowledge by affiant or by the source of information referred to in the affidavit, that Travis had possession of narcotics at the time in question. He cites Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, as holding that an affidavit which does not contain an affirmative allegation of this kind is fatally deficient.

The substantive part of the affidavit under review in *Aguilar* is quoted in the margin.[1] The Supreme Court pointed out that the affidavit contained no affirmative allegation that the affiant, or his unidentified source, spoke with personal knowledge. Where this is the case, and the affiant indicates that he relied upon the conclusions of an informant, the Court in effect held that the magistrate must be informed of: (1) some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable."

Application of these principles in *Aguilar* led the Court to conclude that the affidavit at issue in that case was inadequate. Application of the same principles in the subsequent case of United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, led the

1. " 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.' " (Footnote omitted.)

Court to accept the affidavit involved in that case as sufficient. This affidavit, set out as an appendix to the *Ventresca* opinion, consists of several pages and is in great detail. The facts therein alleged were asserted to be based upon observations made by the affiant, and upon information received officially from other official investigators as a result of their observations and investigations. The affidavit described seven different incidents involving an automobile which was utilized in a manner tending to indicate that illegal operations were in progress.

In reaching the conclusion that it did in *Ventresca*, the Supreme Court, at pages 108–109, 85 S.Ct. 941 observed that affidavits used to obtain search warrants must be tested and interpreted in a common sense and realistic fashion. Where some of the underlying circumstances bearing upon probable cause are detailed, where reasons for crediting the source of the information are given, and when a magistrate has found probable cause, the courts, *Ventresca* cautions, should not invalidate the warrant by interpreting the affidavit in a "hypertechnical" manner.

■ In the light of the principles announced and applied in *Aguilar* and *Ventresca*, we turn to an examination of the affidavit here in issue, the pertinent part

of which is quoted in the margin.[2] It will be noted that Travis is correct in stating that this affidavit contains no affirmative allegations that affiant, or any of his indicated sources of information, had personal knowledge of facts tending to show that Travis had possession of narcotics at the time in question. But this does not end the inquiry for, as indicated in *Aguilar* and *Ventresca*, where the affiant indicates that he is relying on the conclusions of informants, the affidavit is sufficient if it (1) sets out some underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and (2) alleges some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable.

The source referred to in paragraph 1 of the affidavit was of the belief that each trip Travis made into the United States, including the one which began on February 8, 1965, was for the purpose of acquiring heroin. This conclusion is supported by the source's assertion that Travis is a known "large-scale drug trafficker" who, on prior occasions, has made flights into the United States to acquire heroin. According to the informant, these flights involve travel to the Los Angeles area, avoidance of FAA tower-

2. "And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

  "1. He has information from a source of known reliability THAT:

  "(a) Said Travis has on previous occasions made flights into the United States from the Dominion of Canada for the purpose of acquiring heroin, which said trips have involved travel to the vicinity of Los Angeles, frequenting non-FAA tower-controlled aerodromes.

  "(b) Said Travis is a known large-scale drug trafficker; the source believes that each trip into the United States has been for the purpose of acquiring heroin.

  "(c) On or about February 8, 1965, Travis left for an undisclosed destination in the United States from Vancouver, B. C., Canada in a Mooney Mk 20, Canadian registry CF-JCS, a rented aircraft.

  "(d) On previous occasions, Travis has, on return to Canada, landed first at a remote aerodrome prior to clearing Customs.

  "2. The United States FAA has advised Travis' itinerary on instant trip included fuel stops at Seattle and Medford; additional stop or stops were unascertainable until an apparent fuel stop at Tehachapi Airport, Kern County, on or about February 9, 1965. Next known stop was Sutter County Airport on the evening of February 11, 1965.

  "3. The modus operandi during this trip matches in all significant respects that of previous trips which I believe to have been for the purpose of acquiring and transporting heroin.

  "4. J. H. Leineke, manager of Sutter County Airport, was informed on 11 February 1965 that Travis intended to depart for Canada early during the morning of February 12."

controlled aerodromes, and stops at remote airports prior to clearing Customs in Canada.

■ From this pattern of conduct, the source was warranted in his conclusion that Travis would be transporting heroin on this particular trip if it involved travel to the vicinity of Los Angeles and back to Canada. This latter point was verified by information supplied to the affiant by the Federal Aviation Agency and the manager of the Sutter County Airport.

But the assertions of the source with regard to Travis' narcotic activity can be used to support a conclusion of possession only if those assertions qualify as reliable information. This in turn depends on whether there were present here, underlying circumstances from which the affiant could conclude that the information received from the source was credible. The affidavit's validity depends, therefore, on the satisfaction of the second requirement of the test stated above.

We think that the second requirement was met, although with nothing to spare. According to paragraph 1 of the affidavit, the source had concluded that Travis had established a definite pattern or *modus operandi* for transporting narcotics into Canada; and that this *modus operandi* would be followed on the trip in question. Circumstances related in the affidavit, coming from other sources— FAA and the manager of the Sutter County Airport—tended to corroborate the conclusions of the source with regard to Travis' trip which began on February 8, 1965.

Thus the source referred to in paragraph 1 described with particularity the aircraft which Travis would be flying. The source advised that Travis' trips for the purpose of acquiring heroin had involved travel to the Los Angeles area, and that Travis frequented non-FAA tower-controlled airports. On this particular trip the FAA advised the affiant that after leaving Medford, Oregon, Travis made no ascertainable stops until an apparent fuel stop at Tehachapi Airport, Kern County, which is near Los Angeles. The stop at Yuba City airport, a comparatively remote aerodrome, comports with the *modus operandi* predicted by the source. In addition, the airport manager advised the affiant that Travis intended to depart for Canada early on the morning of February 12, thus completing his round trip.

■■ The affiant, by virtue of information obtained from reliable independent sources, was able to verify that this particular trip matched in general respects the *modus operandi* predicted by the informant relied upon in paragraph 1 of the affidavit. This constituted sufficient grounds for the affiant to conclude that the other information supplied by this source—including the belief that Travis would be transporting heroin —was also credible. See Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327.

In judging the sufficiency of the affidavit in question we have heeded the warning in *Ventresca* that such affidavits are to be read in a common sense rather than technical manner. We have been mindful of the view expressed in Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697, and repeated in *Ventresca,* 380 U.S. at page 106, 85 S.Ct. 741, that in a doubtful or marginal case a search pursuant to a warrant may be sustained where without a warrant it would fall. We have given recognition to the fact, adverted to in *Ventresca,* at page 108, 85 S.Ct. 741, that such affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. And we have taken note of the fact that here the investigating agents were acting under a handicap as to place and time. The airport where the agents had converged was in a comparatively remote area, the airplane was gassed and ready to go, and Travis intended to fly out in the morning.[3]

3. Under these circumstances the agents were possibly entitled to make the search and seizure without a search warrant under the so-called "exigent circumstance"

We hold that the affidavit before us is not insufficient because it lacks an affirmative allegation of personal knowledge by affiant or his sources of information. We find no merit in appellant's further arguments that the affidavit is insufficient because it is based on hearsay without disclosure of underlying circumstances, and because it fails to state the time of the observation of the events on which the affidavit is based.

▮ Travis additionally contends that the search warrant is invalid because, while the affidavit recites that the information was from a source "of known reliability," affiant's testimony given at the pretrial hearing establishes that he did not personally know the source was reliable.

The affiant, William Wong, disclosed at this hearing that his principal source referred to in paragraph 1 of the affidavit was Sergeant Webster of the Royal Canadian Mounted Police (RCMP). Wong had not dealt personally with Webster in this case, and was not sure whether he had dealt with him in any previous case. Affiant's office, however, had had prior dealings with Webster. Affiant relied upon Webster as a credible source of information because he was a fellow law enforcement officer. Webster conveyed his information by means of telephone calls to the Bureau's Seattle, Portland and Los Angeles offices, and by means of a classified document which had been delivered to the Bureau's Washington, D. C. office. The affiant testified that he knew that Webster and members of his drug squad and the RCMP had been actively investigating a large ring of narcotic traffickers in the Vancouver area.

We think affiant was entitled to assume that a sergeant of the RCMP engaged in narcotics investigations is a reliable source of information. The circumstance that affiant did not have personal contact with that informant in this case is not of controlling importance in view of the fact that the information passed through official channels. There was no opportunity, out at the Yuba City airport on the night of February 11, 1965, to get affidavits from Bureau officials who had actually obtained the information from Webster. United States v. Pearce, 7 Cir., 275 F.2d 318, cited by Travis on this branch of the case, dealt more with the question of falsity as between the actual facts pertaining to the source, and the allegations in the affidavit. No variance of this kind was established here.

Travis contends that the trial court erred in denying his motion for a bill of particulars disclosing the informant's identity. Without deciding whether, under the circumstances, Travis was entitled to this information, we hold that this motion was, in substance, complied with when the affiant disclosed the identity of this informant at the pretrial hearing on the motion to suppress.

▮ Travis argues that the trial court erred in denying the motion for judgment of acquittal for failure of the prosecution to establish, prima facie, possession of the narcotics by Travis, and *scienter*. We think the Government's evidence was sufficient in both of these respects.

rule, although the Government does not urge this. The "exigent circumstance" exception to the constitutional principle that a search and seizure must be pursuant to a valid search warrant or incident to a lawful arrest was first articulated in Carroll v. United States, 267 U.S. 132, 153, 154, 156, 45 S.Ct. 280, 69 L.Ed. 543. Briefly stated the exception is this: Where it is not practicable to secure a warrant to search a vehicle for contraband goods because the vehicle can be quickly moved out of the locality or jurisdiction, the vehicle may be searched by a proper official then having probable cause to believe that the vehicle contains such goods. This exception was referred to in general terms in United States v. Ventresca, 380 U.S. 102, 106–107 and note 2, 85 S.Ct. 741; United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L. Ed. 59; and Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L. Ed. 436. The exception was applied by this court as recently as Cipres v. United States, 9 Cir., 358 F.2d 709, decided March 31, 1966.

Contrary to Travis' contention, there was no prejudicial error in connection with the action of the prosecution's counsel, during his opening statement to the jury, in reading aloud a portion of 21 U.S.C. § 174, upon which the indictment was based.

Affirmed.