STATE OF CONNECTICUT *v.* LOUIS MAZZADRA ET AL.

SUPERIOR COURT  NEW HAVEN COUNTY  FILE No. 15766
      AT NEW HAVEN

Memorandum filed September 25, 1969

*Arnold Markle,* state's attorney, for the state.

*Goldstein & Peck,* of Bridgeport, for the named defendant.

PALMER, J. The defendant Louis Mazzadra, hereinafter called the defendant, has moved to dismiss the information on the grounds hereinafter discussed.

I

The defendant attacks the information and asks that it be dismissed on the ground that it was filed by the state's attorney for New Haven county and that prosecution of a criminal case by a state's attorney violates the Connecticut constitution.

The reasoning which the defendant uses to reach this rather astonishing conclusion may be summarized as follows: Our state's attorneys are appointed by the judges of the Superior Court; they are responsible to those judges; and they are therefore members of the judicial department of this state. Prosecution by a member of the judicial department interferes with the executive department, whose function it is to enforce prosecution of the criminal laws. Therefore, says the defendant, prosecution of this case by the state's attorney for New Haven county is a violation of the division of the powers of our state government into three distinct departments, legislative, executive and judicial.

The flaw which nullifies the defendant's argument is his claim that only the executive department of government may prosecute criminal offenses. Whatever the constitutions or laws of other states may provide, there is no established or recognized constitutional doctrine or principle in this state that criminal prosecutions must be undertaken by a member or agency of the executive department. The defendant points to article fourth, § 12, of the Connecticut constitution, which provides that the governor "shall take care that the laws be faithfully executed," as support for his contention that only the executive department may constitutionally prosecute crimes. This exact language was contained in § 9 of article fourth of the constitution of 1818 and has been a part of our constitutions since that time, and it has never been claimed or construed to mean that criminal prosecutions could emanate only from the executive department.

The defendant recognizes the fact that in *Adams* v. *Rubinow*, 157 Conn. 150 (1968), a landmark decision in the annals of the constitutional law of this state, it was said (p. 163 n.4): "It perhaps should

be pointed out that personnel in the judicial department . . . have from time immemorial been appointed by the judges of the respective courts. . . . Thus, the appointment of the personnel in a constitutional court, including, but not limited to, state's attorneys . . . , is not within the power of the General Assembly [under our state constitution]." The defendant's answer is that this dictum of the Supreme Court of this state is constitutionally mistaken. The *Adams* case, however, was long and carefully considered, and it was decided by a unanimous court. The very footnote in question was cited with approval by our Supreme Court in the 1969 case of *Ross* v. *Hegstrom,* 157 Conn. 403, 418. This court accepts the dictum of *Adams* v. *Rubinow,* supra, 163 n.4, as an authoritative expression of the constitutional law of this state.

That Connecticut is the only state in which the attorneys for the state in criminal prosecutions are appointed by the judges, if that be the fact, as the defendant asserts, and that legal writers disapprove our system of appointment by the judges have no constitutional weight. Other states may prefer other methods of appointment, and their constitutions may require such other methods. Legal writers without any knowledge of the workings of our system may express disapproval based on their own opinions and theories as to how prosecutors should be appointed. The people of this state "from time immemorial" have, however, been content with the system of appointment of prosecutors by the judges, thereby removing such selection from the political arena, and the court is unable to discern any constitutional impediment to the continuance of the present system, which has been prescribed by the General Assembly.

The court is of the opinion that the defendant's claim is clearly without merit. However, even if

there was a defect in the appointment of the state's attorney for New Haven county, as the defendant contends, the appointee is at least a de facto officer, and his right to perform the duties imposed upon him "could only be assailed in a direct proceeding such as by writ of quo warranto." *State* v. *Hayes,* 127 Conn. 543, 577. The question is not open to the defendant in this criminal prosecution.

## II

The defendant claims prosecution of this case by the state's attorney for New Haven county "deprives defendant of his right to have the issues in . . . [this case] determined in an adversary, accusatorial proceeding in accordance with due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, § 8 of the Connecticut Constitution."

The defendant's argument that the Connecticut system whereby state's attorneys are appointed by the judges of the Superior Court deprives him of due process of law cites no authority to support it. In substance, he says that the accusatorial system is a part of our fundamental law, and there is a violation of that system in a criminal case when the prosecutor and judge are in the same department of government.

It is utterly unrealistic to urge that under the Connecticut system criminal causes are not determined in an adversary, accusatorial proceeding which fully grants due process of law to every defendant. While our state's attorneys are appointed by the judges of the Superior Court, which, of course, includes the judges of the Supreme Court, they are in law and in practice completely independent public officers. A state's attorney "is not only an officer of the court, like every attorney, but

is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent." *State* v. *Ferrone,* 96 Conn. 160, 168.

The court finds no merit in the claim that the appointment of our state's attorneys by the judges of the Superior Court is violative of the defendant's rights to due process of law under either the federal constitution or the constitution of this state.

### III

The defendant next attacks the in personam jurisdiction of this court over him. He says (1) the "warrant pursuant to which the defendant was arrested was issued without a showing of probable cause, as required by the Fourth and Fourteenth Amendments to the Constitution of the United States, Article I, §§ 7, 8, 9 and 10 of the Connecticut Constitution and *State* v. *Licari,* 153 Conn. 127 (1965)," and (2) the "magistrate issuing the bench warrant made no finding of probable cause to believe defendant committed the offenses alleged in the information."

In regard to the second ground stated above, the defendant is simply mistaken. The warrant was issued by a judge of the Superior Court, and it plainly recites the following: "Application with affidavit attached hereto having been made . . . and probable cause for the issuance of said warrant having been found, the following order [of arrest] is issued: . . . ."

With one exception hereinafter mentioned, the defendant's claim that the affidavit pursuant to which the warrant was issued was insufficient to support a finding of probable cause that the defendant committed the offenses alleged simply does not stand the test of logic, as an examination of its contents will demonstrate.

The affidavit was made by James B. White, a member of the Connecticut state police department for seven years and assigned to the detective division of that department. It recites that on November 11, 1968, one MacBecker of 4910-15 Avenue, Brooklyn, New York, reported to the New York city police department that his 1967 Buick LeSabre had been stolen. It bore New York registration number L-9074 and vehicle identification number 454397 Y 131006. The New York police dispatched an alarm on November 11, 1968, identifying this vehicle as a stolen car. Trooper White subsequently interviewed MacBecker, who supplied him with the same information as that circulated by the New York police in regard to the stolen car.

The National Automotive Theft Bureau furnished the Connecticut motor vehicle department with a series of motor vehicle identification numbers, including number 454397 Y 134642, for an examination of its records to determine whether any of these numbers appeared on vehicles registered in Connecticut. Examination of the records disclosed that identification number 454397 Y 134642 appeared on a 1967 Buick LeSabre registered in the name of Kathleen DeLuca, 33 Woodside Terrace, Milford, Connecticut. Trooper White physically examined this vehicle and found the identifying number on the plate riveted to the driver's door frame to be number 454397 Y 134642. Trooper White ascertained that on January 8, 1969, Ralph DeLuca, the husband of Kathleen DeLuca, purchased this 1967 Buick LeSabre from Louis Mazzadra, the defendant, for $1800. Ralph DeLuca informed Trooper White that when the car was delivered to him and his wife it bore New York registration number 24-KU. The New York department of motor vehicles informed Trooper White that 24-KU was listed in the name of Marvin Taylor, 98 Bush Avenue, Elmhurst, Long

Island, New York. The New York city police checked and found no street named Bush Avenue in Elmhurst, Long Island and that the name Marvin Taylor appearing on the New York registration was fictitious.

Ralph DeLuca informed Trooper White that he was introduced to the defendant Louis Mazzadra by Edward E. Ruhs, 408 Charles Street, Bridgeport, Connecticut, a codefendant in this case, for the purpose of buying the vehicle in question. At the time of this transaction Ralph DeLuca, Louis Mazzadra and Edward Ruhs were all employed at the Avco-Lycoming Company in Stratford. On March 11, 1969, Ralph DeLuca advised Trooper White that he, DeLuca, called Edward Ruhs about the car he had purchased from the defendant Mazzadra because the police had been to DeLuca's home making inquiries. Ruhs, the codefendant, told DeLuca to tell the police he purchased the car directly from Marvin Taylor and not to involve Ruhs or Mazzadra, and further to make up a description of Marvin Taylor. On March 13, 1969, after the 1967 Buick LeSabre had been impounded, DeLuca saw Ruhs at a union meeting at the Avco plant in Stratford, at which time Ruhs told DeLuca that this could involve some big people and to watch what he told the police.

Trooper White's investigation further revealed that on March 16, 1967, the Buick Motor Company of General Motors Corporation sold a 1967 Buick LeSabre, identification number 454397 Y 134642, to the Circle Buick Company, 1731 Broadway, New York, N.Y. This vehicle was sold to the Conomee Leasing Systems, Inc., 157 West 57th Street, New York, N.Y. The vehicle was then leased to Dr. E. J. Krassner, 271 Central Park West, New York, N.Y. A physical examination of this vehicle revealed that the vehicle identification number plate 454397 Y 134642 was missing from this car. The vehicle

identification number plate of the car purchased by Ralph and Kathleen DeLuca from the defendant bore this exact number.

The court is satisfied that the facts recited in the affidavit are amply adequate to satisfy the constitutional requirement that probable cause existed for the issuance of a bench warrant for the arrest of the defendant on charges of (1) theft of a motor vehicle, as alleged in the first count of the information, (2) receiving stolen goods, as alleged in the second count, and (3) conspiracy, as alleged in the fourth count.

"Theft, as well as receiving stolen property, is a transitory crime for which the defendants could be prosecuted in this state even though the actual theft or receiving occurred in . . . [New York]." *State v. Palkimas,* 153 Conn. 555, 561. Under the law of this state, "the possession of property recently stolen, if unexplained and standing alone or without other facts pointing to a contrary conclusion, will justify . . . [the] inference that the possessor stole the property, and the inference may be sufficiently strong to warrant a conviction of a charge of theft. . . . The soundness of the inference to be drawn involves the probative value of the circumstantial evidence. . . . It may justify an inference of theft, or of receipt of stolen goods, largely depending on the other facts and circumstances. It is really a question of logic rather than a question of law." Id., 558. The recitals of the affidavit that the defendant sold a car, which had been stolen from MacBecker, to Ralph DeLuca for $1800 furnish probable cause for the charges of theft of a motor vehicle and receiving stolen goods. The introduction of DeLuca to the defendant by Ruhs, the codefendant, and Ruhs's statements to DeLuca to tell the police he purchased the car from the fictitious Marvin Taylor directly,

and not to involve the defendant or Ruhs, and to make up a description of Marvin Taylor, and to watch what he told the police, constitute probable cause for the charge of conspiracy.

However, while the affidavit states facts to establish that a manufacturer's number was removed from the 1967 Buick LeSabre sold to Circle Buick Company and then sold to the Conomee Leasing Systems and leased to Dr. E. J. Krassner, the affidavit does not contain any recitals which constitute probable cause to believe that the defendant committed the offense of removing a manufacturer's number, as charged in the third count of the information. There was probable cause to believe that this offense was committed, but not probable cause to believe that the defendant did it. Accordingly, the motion to dismiss must be granted in respect to the third count of the information.

The defendant also attacks the affidavit of Trooper White on the ground that it does not characterize his "informants as reliable or trustworthy." This argument by the defendant "fails to take account of the distinction between reports furnished by paid police informants, recent arrestees, or anonymous informants, who often supply information confidentially, usually for motives other than good citizenship, and those furnished by objective private citizens, who as victims or witnesses are acting openly for the purpose of aiding law enforcement. Although in the former cases it is incumbent upon the police to have tested the reliability of the informant through past experience with him or through corroboration of the essential elements of his statements . . . , in the latter cases the police may justifiably act upon the report of the informant without so testing his reliability." *People* v. *Tharp,* 78 Cal. Rptr. 412, 414.

"Although information provided by an untested informer or by an anonymous informer is not, without some showing justifying reliance, sufficient to justify an arrest . . . , information from a citizen who purports to be the victim of a robbery . . . has been held sufficient even though his reliability has not been previously tested. . . . Such a person, who may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct." *People* v. *Hogan,* 80 Cal. Rptr. 28, 29; see *People* v. *Lewis,* 240 Cal. App. 2d 546, 550.

MacBecker and Ralph DeLuca, the individual informants named in the affidavit, are not anonymous "stool pigeons" or common police informers. They appear to be ordinary citizens who, through no fault of their own, became the victims of criminal activity. They are identified by name. Their addresses are given. There is no reason to believe that either of them has previously been a police informant. How then could Trooper White characterize them as "reliable" or "trustworthy"? The court, however, is entitled to conclude that when a private citizen reports that his automobile has been stolen, or when he is informed that a stolen motor vehicle is in his possession and he in turn informs the police of the identity of the person from whom he purchased it, the police are entitled to act upon this information without the necessity of specifically vouching for the reliability and trustworthiness of their informants.

## IV

The final claim is that "this prosecution is invalid in that it deprives defendant of his constitutional

and statutory right to a hearing in probable cause under all the circumstances of this case."

The facts are that the defendant was arrested on March 19, 1969, pursuant to a warrant issued by the Circuit Court in the fifth circuit, and was charged by information with the crimes of (1) possession of stolen goods, (2) theft of motor vehicle, and (3) removing manufacturer's number or motor number. A hearing in probable cause was scheduled to be held on July 8, 1969, and was continued to July 15, 1969, to enable the state to apply to the Superior Court for the issuance of a bench warrant. Thereafter, a warrant for the arrest of the defendant on the above-mentioned charges and on the additional charge of conspiracy was issued by a judge of the Superior Court, and the probable cause hearing was not held. The state's attorney for New Haven county filed an original information in this court.

Our Supreme Court has repeatedly overruled the claim that there is in this state a right to a hearing in probable cause. "The procedure which was followed in this case has been the practice in this state for a great many years and serves the desirable end of expediting the disposition of criminal cases to the mutual benefit of the defendant and the state. *State* v. *Hayes,* 127 Conn. 543, 581 . . . ; *State* v. *Chin Lung,* 106 Conn. 701, 720 . . . . The filing of the original information in the Superior Court was not prohibited by any constitutional provision. *Dillard* v. *Bomar,* 342 F.2d 789 (6th Cir.); *United States ex rel. Cooper* v. *Reincke,* . . . [333 F.2d 608, 611 (2d Cir.)]; *State* v. *Hayes,* supra." *State* v. *Stallings,* 154 Conn. 272, 278; *State* v. *Purvis,* 157 Conn. 198, 206.

The defendant seeks to avoid the impact of the *Stallings* and *Purvis* cases by claiming that a 1965

amendment to § 54-76a of the General Statutes requires a conclusion contrary to that reached in those cases. This amendment provides: "In a hearing in probable cause the rules of evidence shall apply as if such hearing were a jury trial." Public Acts 1965, No. 321. The only possible reasonable interpretation of this language is that the rules of evidence shall apply in a hearing in probable cause if such a hearing is held. If the General Assembly had intended to provide that a hearing in probable cause must be held in every case where it is not waived by a defendant, it would have been easy to say so. The language of the amendment cannot in reason be stretched and distorted to mean that a hearing in probable cause is mandatory in every case where the defendant wants such a hearing.

There can be no doubt that the right asserted here does not exist under the constitution or statutes of this state. The defendant has cited certain federal decisions which he claims hold that there is a federal right to a preliminary hearing under certain circumstances, but these cases do not purport to hold that this right is of constitutional dimension. He does not mention, however, the case of *Sciortino* v. *Zampano,* 385 F.2d 132 (2d Cir.) (in which defendant's attorney was counsel), which squarely held (p. 134) that there is no constitutional right to a preliminary hearing. It is futile to assert this alleged right unless the United States Supreme Court holds that it exists under the federal constitution and is binding on the states. This it has not done.

The defendant's motion to dismiss the information is denied, except that it is granted in respect to the third count thereof.