STATE OF CONNECTICUT *v.* HOWARD R. LUBAN ET AL.

SUPERIOR COURT          NEW HAVEN COUNTY          FILE No. 15900
AT NEW HAVEN

Memorandum filed January 5, 1970

*Arnold Markle,* state's attorney, for the state.

*Goldstein & Peck,* of Bridgeport, for the named defendant.

*Theodore I. Koskoff,* of Bridgeport, for the defendant Gordon.

SHAPIRO, J. Since the motions of the defendants Luban and Gordon are identical and were argued and briefed in that manner, this single memorandum will serve to cover the motions of both defendants.

## PART A

The motions to dismiss are in three parts and will be so discussed. The claim is made that the prosecution is controlled and directed by the state's attorney for New Haven County; that pursuant to statute state's attorneys are appointed by the judges of the Superior Court, are responsible to these judges, and are members of the judicial department; that as a matter of practice, the assignment of crim-

---

[1] Another memorandum in this case appears in 28 Conn. Sup. 312.

inal cases for the purposes of motions, pleas, trial and disposition is made by the state's attorney's office rather than by the clerk; and that prosecution by the state's attorney (a) violates the separation of powers doctrine of article second of the Connecticut constitution and interferes with the operation of the executive department, which department, not the judicial department, has the function of taking care that the laws are faithfully executed pursuant to article fourth, § 12, of the Connecticut constitution; and (b) deprives the defendants of their right to have the issues in the cause determined in an adversary, accusatorial proceeding in accordance with the due process of law as guaranteed by the fourteenth amendment to the constitution of the United States and article first, § 8, of the Connecticut constitution.

## I

In their brief, these defendants recognize that their argument concerning the status and powers of the state's attorneys has been rejected in *State* v. *Mazzadra,* 28 Conn. Sup. 252, as well as in *State* v. *DiLeo,* 28 Conn. Sup. 354. However, they urge this court to review the arguments.

The judges of the Superior Court appoint the state's attorneys. General Statutes § 51-175. The judges of the Superior Court have the power to remove state's attorneys from office. § 51-175. The judges of the Supreme Court prescribe the compensation plan of the detectives working in the state's attorney's office; § 51-12; and a state's attorney may appoint detectives to positions authorized by the judges of the Superior Court. § 54-75. In any case a state's attorney shall deem it necessary to obtain expert witnesses, where the cost of so doing is likely to exceed the sum of $300, he shall secure the approval of a judge of the Superior Court before in-

curring such expense. Practice Book § 471. No accountant shall be employed by a state's attorney without the approval of a judge of the Superior Court. Practice Book § 473.

From the foregoing, it is claimed that state's attorneys are appointed, removed and controlled by the judges; that judges themselves could not act as prosecutors without violating the separation of powers doctrine and neither can their judicial department appointees, i.e. state's attorneys, whose tenure and expenditures are controlled by the judges. As has been stated, the principles of the separation of powers of the three distinct departments of government have been declared as being "fundamental to the very existence of constitutional government as established in the United States." *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 593. With this statement by our Supreme Court no one can disagree.

It is true that the courts cannot exercise administrative functions even if the legislature attempts to confer specific power upon them to do so. *State Water Commission* v. *Norwich*, 141 Conn. 442, 445. The appointment of state's attorneys can hardly be called an administrative function. In spite of the intensive research and argument of the defendants, this court cannot conceive of such appointments being classified as belonging to the executive branch of state government. It is already clear that the legislature has consistently adhered (General Statutes § 51-175) to the policy of the appointment and removal of state's attorneys by the judges as well as (§ 54-75) to the policy of authorizing the position of detective, appointment to be made by the state's attorneys—this together with the need of approval by a judge of certain engagements of expert witnesses or accountants by virtue of rules adopted by the judges. Practice Book §§ 471, 473. Certainly,

as to the appointment or removal of state's attorneys, any change as to that would first require legislative action. Even if the legislature saw fit to make a change, there could arise a serious constitutional question as to a conflict between the judicial and legislative branches of our state government.

The opinions in *State* v. *Mazzadra,* supra, and *State* v. *DiLeo,* supra, accepted as binding the recent footnote dictum in *Adams* v. *Rubinow,* 157 Conn. 150, 163, which was referred to in *Mazzadra* (28 Conn. Sup. at 254) as "a landmark decision in the annals of the constitutional law of this state." Of that there can be no doubt, and this court subscribes to the same view. It was said in *Adams* (p. 163 n.4) : "It perhaps should be pointed out that personnel in the judicial department . . . have from time immemorial been appointed by the judges of the respective courts. . . . Thus, the appointment of the personnel in a constitutional court, including but not limited to, state's attorneys, . . . is not within the power of the General Assembly [under our state constitution]." The defendants contend that this dictum is not controlling in their present motion, even though accepted in *Mazzadra* and *DiLeo,* supra. What the defendants urge here is that this court recognize that the *Adams* dictum is entitled to no more weight than the dicta in earlier cases, for it, the *Adams* dictum, is "clearly contrary to the supreme law." The very footnote in *Adams* was cited with approval by our Supreme Court in *Ross* v. *Hegstrom,* 157 Conn. 403, 418. This court accepts, as did *Mazzadra* and *DiLeo,* the dictum of *Adams* as an authoritative expression of the constitutional law of this state.

The defendants argue that Connecticut is the only state in which attorneys representing the state in criminal prosecutions are appointed by the judges. The system used in Connecticut has been function-

ing "from time immemorial." This court believes it has functioned well. Other states may prefer other methods of appointment, or their constitutions may require other methods. While no evidence has been produced—there can be no dispute as to Connecticut—under our system of appointment capable men have been appointed as state's attorneys and as their assistants. Not a breath of scandal has ever attached to their performance in office, which has been in the highest tradition of that office. They have worked with zeal and dedication and in the interests of the public good. In fact, at least as to a state's attorney, he is now required, if appointed after July 1, 1967, to devote his full time to the duties of his office and is prohibited from engaging in the practice of law. General Statutes § 51-175.

This claim is without merit and will involve no further discussion.

## II

The defendants' motions make the claim that this prosecution is controlled and directed by the state's attorney for New Haven County. It is true that our criminal court procedure does not involve the use of printed assignment lists, as does the civil side of court. The procedure in criminal cases is guided by many statutes, as shown in volume 10 of the General Statutes, beginning with page 235. Chapters 21, 22 and 23 of the Practice Book deal with "Procedure in Criminal Cases," "Pleadings in Criminal Cases," and "Fees and Expenses in Criminal Cases." A reading of the rules will disclose a basic method of procedure in criminal cases. This includes consultation with the state's attorney; Practice Book § 470; expense of employing experts (exceeding $300); § 471; appearance for an accused; § 484; forms of pleading, including bills of particulars and supplemental bills of particulars; and other procedures as

set forth in chapter 22 of the Practice Book. As a matter of practice, it rests with defense counsel to file the requisite motions prior to trial. If there is a delay in having these motions heard, the blame should be put upon defense counsel. If the claim is that a state's attorney delays the hearing of a motion because he controls the calendar, then, surely, notice of that to the presiding judge, by motion, conference, or letter, would bring immediate action. If defense counsel fails to do this, it is a fair inference that he goes along with the "delay."

As to the assignment of cases for a trial, at the time of a plea of not guilty the court assigns a tentative trial date. This may require a later change because a prior case or matter remains on trial. When this occurs, counsel are notified by the office of the state's attorney. From the court's view, this is a gratuitous courtesy. The state's attorney has no duty so to notify defense counsel. It may be that counsel in the immediate cases would prefer to attend court on the day to which the case is assigned and then be kept in attendance from day to day, as is the practice in civil matters. The court doubts that such a practice would meet with the general accord of the bar. Thus, in the handling of the criminal trial and motion calendar, matters are set forth in daily typewritten sheets. Counsel are notified either in person or by telephone. So far as this court is aware, and has experienced, if counsel require a change of date, this is done voluntarily by the state's attorney or, if not by him, by the court on proper presentation and for a valid reason.

There may be a more efficient way to handle the criminal motion and trial calendar. The present method has been used "from time immemorial." Of course, that does not mean that there is no room for improvement. Any change would rest with the judges, and proposals for the handling and methods

of such changes should be brought to the attention of the chief judge and the chief court administrator, or if a proposed rule is suggested, it should be brought to the attention of the rules committee of the judges. General Statutes § 51-14.

### III

Another claim made is that the prosecution of these cases by the state's attorney "deprives defendant of his right to have the issues in . . . [this case] determined in an adversary, accusatorial proceeding in accordance with the due process of law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article 1, Sec. 8 of the Connecticut Constitution."

The defendants argue that "nothing is more foreign to the accusatorial system than a criminal proceeding where prosecutor and judge are in the same department and where the prosecutor possesses powers of administration normally executed by the clerk." While this issue appears to have been generally covered earlier in this memorandum, the real claim here is that a "union of prosecutor and judge in the same department and the manner by which the docket is controlled are equally a gross breach of the appearance of justice." The herein defendants also allege that the state refused them permission to enter a plea and file motions later. This latter claim will be discussed first.

"Under modern criminal procedure, the failure to raise a claim of lack of jurisdiction of the person until after the entry of a plea of . . . not guilty is strong evidence of a consent to the jurisdiction of the person or, to use the language of *Church* v. *Pearne,* 75 Conn. 350, 355, . . . of a 'voluntary submission' to the jurisdiction of the court over the person. An analogous rule applies in civil cases. *Beardsley* v. *Beardsley,* 144 Conn. 725, 730 . . . .

Under § 468 of the Practice Book the procedure in civil cases is made applicable, insofar as adaptable, to criminal cases. Pleadings in civil cases are to be filed as set forth in §§ 74 and 75 of the Practice Book. From this it follows that any preliminary motion in a criminal case should be filed prior to a plea of guilty or not guilty, unless the grounds for the motion are not then known to, or reasonably ascertainable by, the accused. A specific application of this general rule in criminal cases is embodied in § 495 of the Practice Book." *State* v. *Licari,* 153 Conn. 127, 130.

From the foregoing, it is clear that the state's refusal of permission to an accused to first enter a plea and then to file motions is in accord with our procedure and law. If the state has permitted other defendants to plead first and file motions later, it was an obvious waiver of the requirements of our practice. No one can argue that if a party, whether in civil or criminal practice, wishes to waive certain procedural requirements, it or he may not do so.

The other issue of a "union of prosecutor and judge in the same department, etc." will now be briefly discussed. Here, the defendants proceed on the claim, as the court views it, that the state's attorney works hand in glove with the judge, thereby producing "a gross breach of the appearance of justice." This is a statement hardly becoming a member of the bar unless he resorts to a reckless abandon of his oath as an attorney and of the first canon of professional ethics. The added claim that "the manner by which the docket is controlled [is] equally a gross breach of the appearance of justice" requires no further discussion by the court. It is elsewhere taken up in this memorandum.

The defendants' motions to dismiss, as to Part A thereof, are denied in toto.