No. 24993.

THE PEOPLE OF THE STATE OF COLORADO *v*.
RANDOLPH J. GLAUBMAN.
(485 P.2d 711)

Decided June 1, 1971.

Stanley F. Johnson, District Attorney, Robert M.

JENKINS, Chief Deputy, A. JAMES MORAVEK, Deputy, for plaintiff-appellee.

TAUSSIG, MCCARTHY & SNYDER, MICHAEL J. MCCARTHY, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

THE defendant, Randolph Jay Glaubman, filed a motion to suppress certain evidence that was seized from him in the course of a narcotics investigation. The defendant's motion was heard and denied, and pursuant to C.A.R. 4.1, the defendant prosecutes this interlocutory appeal.

Randolph Jay Glaubman was one of the two occupants of room 250 in the Royal Inn Motel in Boulder, Colorado. Robert Benson registered for the room and indicated that there would be two in the party at the time he signed the registration card. The defendant, Glaubman, was seen in the lobby of the motel with Robert Benson on several occasions. On one occasion, the manager of the motel, Linda Brown, overheard a conversation between Benson and the defendant in which the words "selling acid" were used. The record reflects that Benson and the defendant occupied room 250 for about ten days, and during this period, the manager made a room inspection after the occupants refused maid service. The manager entered the room with the maids to see that the room was properly maintained. In the course of her inspection, she saw the defendant, Glaubman, in the room that was taken out in Benson's name. The manager encountered difficulty in collecting the motel rent and called the room several times, asking for Robert Benson. Each time, the person who answered said, "He isn't here — this is Randy." After several suspicious happenings, the manager called the police. She informed the police that the

license number on the car, placed on the registration card by Benson, was incorrect when she checked the registration card against the license plate on the car driven by Benson. At that point, she checked Benson's home address in Indiana, as it appeared on the registration card, and found there was no such address. Following her discovery of the false information on the registration card and the failure to pay rent, she went to room 250 on a routine inspection; and while in the room, she noticed a considerable number of seeds scattered about the floor, which she identified as marijuana seeds. Her background in the motel business had extended over a period of more than thirteen years; and during that time, she had, on twenty-five or thirty occasions, observed material which was identified by law enforcement officials as marijuana. After noting the presence of the marijuana seeds in the room, she notified the police and advised them of the presence of the marijuana seeds in the room.

The police undertook an investigation and found that Benson's car had been rented at a local agency and that the name under which the car had been rented was Benson's, but that a different spelling had been used and that a local address which was used was not the address of the motel. The police also learned that Benson had offered a California driver's license for identification when he rented the car.

With the information obtained from the manager of the motel and the information that was unearthed in the course of the investigation, the police officers applied for a search warrant on May 20, 1970. In executing the warrant, Benson was found in the room with a large supply of narcotic drugs and was arrested.

On May 22, 1970, detectives of the Boulder Police Department were informed by fellow officers that probable cause existed for the arrest of Randy Glaubman. The charge that was to be filed against Glaubman was reported by the detectives' fellow officers to be possession of narcotics and possession with intent to sell. The detec-

tives were advised by their fellow officers that the defendant was on his way to the Royal Inn Motel and should be there in a few minutes. The detectives were also told to contact the motel manager, so that they could readily identify the defendant. When the detectives reached the motel, they contacted the manager, who took them to room 250. A stakeout was planned, but before the officers could obtain a location for the stake-out, the defendant, Randolph Jay Glaubman, appeared. When he saw the police officers, he started to walk in a different direction; and his pace quickened. The officers followed; and when they approached a stairway, with one flight of stairs leading to the roof and one to the lower level, they found that Glaubman had gone to the roof and was hiding in the shadows on the roof.

The defendant was arrested, and in a subsequent search, which was made incident to the arrest, the officers seized a purse and a book which Glaubman held in one hand and also took a leather satchel which the defendant had in his other hand. The detectives also saw, and later searched, a leather pouch which Glaubman had tied to his pants. At the hearing on the motion to suppress, Detective Spotts said that the "pouch was dangling from his britches and when it was opened, it contained hashish." The defendant's purse was also opened, and it contained LSD. The purse and the pouch were both searched at the detective bureau at the police station and were opened without a warrant. Before opening the satchel, the detectives obtained a search warrant, and thereafter, upon opening the satchel, the detectives found that it contained marijuana.

To support the motion to suppress, the defendant contends that the warrant to search room 250 was defective, because the warrant was based solely on uncorroborated hearsay statements of Linda Brown, the manager of the motel. [The questioned affidavits appear as Appendix A and Appendix B.] *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar*

*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971). As a further basis for suppressing the evidence, defense counsel urges that the arrest of the defendant and the seizures made subsequent thereto, were illegal, since they were premised solely on information gained from the illegal search of room 250. Defense counsel also contends that evidence was seized pursuant to a warrantless search not incident to the defendant's arrest.

### I.

In analyzing this rather complex set of circumstances, we must first determine whether the affidavit which was presented to the county judge to obtain a search warrant for room 250 was legally sufficient. [The affidavit appears as Appendix A.] The police prepared the affidavit after receiving information from Linda Brown. She related, among other things, that she observed marijuana seeds in room 250 and was able to identify the defendant, Randy Glaubman, and Robert Benson. She had no reason to falsify information or to mislead the police.

■ Counsel for the defendant would have us apply the same rules to a citizen who witnessed the perpetration of a crime in the motel which she was managing that were applied to the so-called confidential, reliable informant in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The two-pronged test announced in *Aguilar v. Texas, supra,* requires that the officer establish: (1) the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. Defense counsel argues that the affidavit does not include facts which show that Linda Brown was credible or her information reliable.

In *Edmondson v. United States,* 402 F.2d 809 (10th Cir. 1969), a search warrant obtained by FBI agents was challenged on basically the same grounds that the de-

fendant is urging us to recognize as error in this case. There, the defendant's identification was attributed to some wide-awake citizens in the town of Nash, Oklahoma, who identified his car. Judge Hill, in sustaining the validity of the warrant, said:

"At the outset it is to be noted that searches made pursuant to a warrant are much preferred over the hurried actions of police officers acting without benefit of the deliberate determinations of a neutral magistrate. In fact, in a doubtful or marginal case a search under a warrant may be sustainable where without one the search would fall. Nonetheless, in reviewing the propriety of such a search, the requisite probable cause must be found and it must be demonstrated solely by the information brought to the attention of the magistrate. It is essential then that the facts as set forth in the underlying affidavit clearly substantiate the action taken, for although the reviewing court will pay substantial deference to the judicial determination rendered 'the magistrate [must] perform his "neutral and detached" function and not serve merely as a rubber stamp for the police.' Consequently probable cause cannot be established by affidavits which are purely conclusory and merely state that the affiant or his informant believe that probable cause exists. It is permissible, however, for the affidavit to be based upon hearsay if the magistrate is informed of the underlying circumstances from which the affiant concludes that the hearsay is credible.

"After a careful application of the principles enunciated above, we conclude that the warrant was validly issued. Appellant stresses the fact that the affidavit is based in part upon hearsay information furnished by the residents of Nash, Oklahoma. Recognizing that reliance upon hearsay is permissible, appellant nevertheless urges that there is nothing in the affidavit attesting to the reliability of the Nash residents or the credibility of the information they supplied. It is true that the affiant did not indicate in the usual manner that the informants

were reliable. It is also true that these were not paid informers, hence there were no past tips or other dealings with the Nash residents with which to establish their reliability as is the case with the common police informant. However, other underlying circumstances were presented to provide 'a substantial basis for crediting the hearsay.' . . ."

In *Coyne v. Watson*, 282 F. Supp. 235 (D.C. Ohio, 1967), the Court provided us with a direction when it said:

"The affidavit is and has been claimed as insufficient in several respects, (a) there is nothing in the affidavit to indicate that the informers are 'reliable' or 'credible' people; . . .

"It is true that language may be found in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879; Aquilar [sic] v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, which, at first blush, would almost seem to require the use of the verbiage 'credible' or 'reliable' in connection with the 'informers' in affidavits for search warrants based on hearsay, as distinguished from the personal knowledge of the affiant. The affidavit involved in this case does not use either of those adjectives on its face. However, the reason which might require the use of such an adjective or the equivalent is the basic or underlying requirement of something in the affidavit to indicate a 'substantial basis for crediting the hearsay.' In our view the requirement of 'substantial basis' is better met — or at least equivalently met — with the description of the informer or informers as 'eye witnesses.' This certainly indicates a strong reason for the officer's belief based upon which the magistrate may conclude that probable cause exists. . . ."

In *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466 (1968), the Court was confronted with a similar problem in determining whether or not the facts which were sup-

plied to the police by a citizen-teacher provided probable cause. A rape-murder had brought the police to an Illinois school, and concerned teachers offered information which tied Hester in to a web of circumstances surrounding the rape and murder of a teacher who was investigating a sex offense that involved Hester. In upholding the arrest, the Court said:

"[The detectives] ... had a right to rely upon the partly hearsay information which they received from Miss Fritsch and Mrs. Considine (Draper v. United States, 358 U.S. 307, 311-12, 79 S.Ct. 329, 332, 3 L.Ed.2d 327), and the usual requirement of prior reliability which must be met when police act upon 'tips' from professional informers does not apply to information supplied by ordinary citizens. (*Draper*; People v. Lewis, 240 Cal.App.2d 546, 49 Cal.Rptr. 579, 582; George, Constitutional Limits on Evidence in Criminal Cases, 13.) ...."

■ Courts have recognized that a different rationale exists for establishing the reliability of named citizen-informers than the courts have required for the ordinary police informer. *State v. Paszek*, 50 Wis.2d 619, 184 N.W. 2d 836 (March 30, 1971). In the *Paszek* case, a drug store clerk sold some gummed cigarette paper and was offered an opportunity to purchase marijuana. Paszek showed the clerk a container containing what appeared to be marijuana and later returned to the drug store. Before he returned, the clerk notified the police, and Paszek was arrested, and in a search incident to the arrest, marijuana was found. When the arrest was questioned, the Wisconsin Supreme Court recognized that the test for probable cause to arrest was the same as the test for probable cause to issue a search warrant and found that the clerk was a concerned citizen who acted without thought of payment or concession or through motives of revenge and was actually a witness to suspected criminal activity.

■ Linda Brown stands on the same footing in this case. She made her information known to the police, and

the police verified the information which was available. She was identified by name and is not on the same footing as the common informant who seeks to remain nameless and hidden and barters and sells information to the police. The nature of informants, which are a necessary part of police work, is such that the common informant is hidden behind a cloak of anonymity. A special privilege has been granted to the police to insure that the identity of the informant is not disclosed, except under circumstances that would promote or cause a failure of justice if identity of the informer was withheld from the defendant. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Gutterman, *Informer Privilege,* 58 J. Crim. L. 32 (1967). More often than not, the informant is paid or provides information in exchange for immunity from prosecution for his own misdeeds.

■ Our view, which is supported by a number of decisions, is that the citizen-informer, adviser, or reporter who acts openly to see that our laws are enforced should be encouraged, and his information should not be subjected to the same tests as are applied to the information of an ordinary informer. *People v. Hoffman,* 45 Ill.2d 221, 258 N.E.2d 326 (1970); *People v. Carter,* 253 N.E.2d 490 (Ill. 1969); *People v. Hester, supra; State v. Mazzadra,* 28 Conn.Sup. 252, 258 A.2d 310 (1969); *People v. Griffin,* 250 Cal.App.2d 545, 58 Cal.Rptr. 707 (1967).

When citizens are involved, it cannot be expected that they would have had past transactions or dealings with the police. *See People v. MacDonald,* 173 Colo. 470, 480 P.2d 555 (1971).

■ Our reasoning is supported by the following language in *Walker v. State,* 196 So.2d 8 (Fla. 1967), where the Florida Supreme Court said:

"Clearly, a person who voluntarily calls the police with information concerning a violation of the law; who identifies himself and waits for the police to arrive; who

cooperates in the apprehension of the suspect; and who testifies at the trial cannot be characterized as an unknown, unreliable informant. He is, in our opinion, a citizen who has observed criminal activity and who is acting in the best interests of society."

We now announce that henceforth, Colorado will follow the citizen-informer rule and will recognize that a citizen who is identified by name and address and was a witness to criminal activity cannot be considered on the same basis as the ordinary informant. We believe, and hold, that the constitutional safeguards afforded under the Fourth and Fourteenth Amendments to the United States Constitution, and under Article II, Section 7 of the Constitution of Colorado are met when the affidavit supporting an arrest warrant or search warrant contains the name and address of the citizen-informant who was a witness to criminal activity and includes a statement of the underlying circumstances. Therefore, we hold that in the light of the citizen-informer rule, the issuance of the search warrant for room 250 at the Royal Inn Motel was valid, and the search and the arrest were proper.

II.

The defendant has also complained about the search which was made following his arrest. He was arrested after being found on the roof of the motel, attempting to conceal himself in the shadows. The arrest was premised in part on information supplied by fellow officers. That fellow officers may provide probable cause to arrest has been recognized and buttressed by the Supreme Court of the United States in *Whiteley v. Warden, Wyoming State Penitentiary*, 39 U.S.L.W. 4339 (U.S. March 29, 1971), and by our decision in *People v. Ware*, 174 Colo. 419, 484 P.2d 103. *See also, Travis v. United States*, 362 F.2d 477 (9th Cir. 1966), *cert. denied*, 385 U.S. 885, 87 S.Ct. 179, 17 L.Ed.2d 113; *United States v. McCormick*, 309 F.2d 367 (7th Cir. 1962).

Apart from the fellow-officer rule, probable

cause for the defendant's arrest was provided by the facts tieing him in to the use of the motel room, together with his presence and participation in conversations relating to drugs. Clearly, the facts in this case are sufficient to satisfy the test for probable cause which was established by the Supreme Court in *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964):

"The constitutional validity of the search in this case ... must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

Recognizing that probable cause existed for the defendant's arrest, we turn to the search that was made following his arrest. The purse and a book were taken from Glaubman, together with the leather satchel that was searched pursuant to a search warrant. [The affidavit supporting the warrant appears as Appendix B.] The pouch dangling from the defendant's britches was also seized. The purse and pouch were searched at police headquarters and were found to contain marijuana and LSD. As a general rule, if the search was not contemporaneous with the arrest, it must fail. *James v. Louisiana*, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965); *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). However, in the instant case, the detectives, after arresting Glaubman, immediately took him to the police station, where the search was made. Under these circumstances, such a procedure was proper. *United States v. Traceski*, 271 F.Supp. 883 (D.C. Conn. 1967); *State v. Horton*, 98 N.J.Super. 258, 236 A.2d 891 (1967); McIntyre & Chabraja, *Intensive Search of a Suspect's Body and Clothing*, 58 J. Crim. L. 18 (1967).

The procedure followed here was specifically approved in the Traceski case, when the Court said:

"It was not necessary that the entire search be conducted on a public street. . . . To be incidental to the arrest the whole search need not be instantly contemporaneous. . . . It was not only permissible, but appropriate, that the thorough search which careful police practice requires should be delayed until it could be made in the station house to which the defendant was promptly taken." [Citing *Charles v. United States,* 278 F.2d 386 (9th Cir. 1960).] *See also, People v. Williams,* 67 Cal.2d 226, 60 Cal.Rptr. 472, 430 P.2d 30 (1967); *People v. Lurie,* 257 Cal.App.2d 98, 64 Cal.Rptr. 637 (1967); *Rodgers v. United States,* 362 F.2d 358 (8th Cir. 1966); *Price v. United States,* 348 F.2d 68 (D.C. Cir. 1965).

 The search of Glaubman at the jail can also be sustained on the grounds that it was an inventory search incident to the Boulder police booking procedure which was designed to prevent Glaubman from causing contraband or weapons to be introduced into the jail and to insure security in the jail. *Roybal v. People,* 166 Colo. 541, 444 P.2d 875 (1968); *Baca v. People,* 160 Colo. 477, 418 P.2d 182 (1966); *Commonwealth v. Bowlen,* 351 Mass. 655, 223 N.E.2d 391 (1967); *State v. Darabcsek,* 412 S.W.2d 97 (Mo.Sup. 1967); *United States v. Frankenberry,* 387 F.2d 337 (2d Cir. 1967); *United States v. Jackson,* 387 F.2d 115 (4th Cir. 1967).

Since the facts support the arrest and the search, we hold that the trial court's decision in denying the defendant's motion to suppress the articles seized following the defendant's arrest was properly denied.

## III.

 In order to answer the remaining contentions raised by the defendant, we must examine the search that was made following the arrest of the defendant and the search warrant which the police obtained before attempting to examine the contents of Glaubman's satchel. [The affidavit supporting the search warrant appears as

Appendix B.] The defendant predicates his attack on the search warrant that was obtained after his arrest on the invalidity of the search warrant which the police obtained to search room 250 at the Royal Inn Motel two days before. Having held that the search warrant that was obtained on the basis of the representations of Linda Brown, whom we have identified as a citizen-informer, was constitutionally unassailable, we find the defendant's argument to be without merit. Probable cause appears in the affidavit, and the search warrant procedure was carried out in such a way as to afford the defendant every right under the constitution. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The guidelines provided by *Faubion v. United States,* 424 F.2d 437 (10th Cir. 1970), were met when the facts providing a basis for the issuance of a search warrant were set forth in an affidavit, and a search warrant was obtained before the satchel was searched and found to contain a hidden cache of illicit drugs.

Accordingly, having considered the defendant's arguments and contentions relating to the search warrants and to the search that was made incident to his arrest, we conclude the judgment of the trial court should be affirmed.

Judgment affirmed.

## APPENDIX A

### AFFIDAVIT FOR SEARCH WARRANT

"In the District Court

"County of Boulder

"State of Colorado

"BEFORE THE HONORABLE JOHN B. BARNARD
 Judge

"The undersigned, an officer authorized by law to execute warrants within the County of Boulder, State of

Colorado, being duly sworn deposes and says: That he (has reason to believe) (* * *) that on (the premises) (* * *) known as Room No. 250, Royal Inn, 770 28th Street, City of Boulder, in the County of Boulder, State of Colorado, there is now located certain property, to wit: A quantity of narcotic drugs as defined by the Colorado Statutes and evidence pertaining to the ownership thereof.

"Certain property * * * the possession of which is illegal, or which would be material evidence in a subsequent criminal prosecution, and the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

"That affiant is an officer of the Boulder Police Department, currently assigned to the investigation of narcotic and dangerous drug violations.

"That on May 20, 1970, affiant met with Miss Linda Brown, the manager of the Royal Inn, 770 28th Street, Boulder, Colorado, who related the following information:

"That at 6:57 a.m. on May 10, 1970, a Mr. Robert Bennsen registered for a room for 2 persons at the Royal Inn, 770 28th Street, Boulder, Colorado, giving as his address 1331 Ohio Street, Terre Haute, Indiana, and his automobile description as a Ford Maverick, bearing Colorado License MM-3296. Room 250 was assigned.

"That Miss Brown subsequently observed the Ford Maverick described and noted that in fact the license plate thereon was MM-3294. Miss Brown then checked with the telephone company in Terre Haute, Indiana, and was informed that there is no known Ohio street in that City.

"From May 10, 1970, to the present time, the occupants of room 250 at the Royal Inn have, according to Miss Brown, refused maid service except when the manager insisted upon providing such service.

"Miss Linda Brown further related to affiant that at 12:15 p.m. on May 20, 1970, she personally went into Room 250 on a routine inspection of the premises, and observed on the floor of that room a considerable quantity of seeds scattered about.

"Miss Linda Brown further informed affiant that she has been actively engaged in the operation of various motels for a period of 13 years and that during that time she has, on 25 or 30 occasions, observed material identified to her by law enforcement officials as marijuana. Miss Linda Brown informs affiant that the seeds she observed upon the floor of Room 250 were, from her past experience, marijuana seeds as she knows them.

"Miss Linda Brown further informed affiant that on May 11, 1970, she overheard the occupant of Room 250, Mr. Robert Bennsen, in the lobby of the Royal Inn discussing the sale of acid (D-lysergic acid).

"On May 20, 1970, at 1:00 o'clock p.m. affiant contacted Mr. Harlan Eleason, Manager of the Rental Department at Arnold Brothers Motor Co. and was informed by Mr. Eleason that a Ford Maverick, bearing Colorado License MM-3294 had been rented by Arnold Brothers Motor Co. on May 10, 1970, to Mr. Robert Bennsen who gave his address as 1065 University, Boulder, Colorado and produced California Driver's license 448155 DD as identification."

## APPENDIX B

### AFFIDAVIT FOR SEARCH WARRANT

"In the District Court

"County of Boulder

"State of Colorado

"BEFORE THE HONORABLE HORACE B. HOLMES

Judge

"The undersigned, an officer authorized by law to execute warrants within the County of Boulder, state of Colorado, being duly sworn deposes and says: That he (has reason to believe) (\* \* \*) that on (the premises) (\* \* \*) known as one tan imitation leather satchel seized from Randolph Jay Glaubman and presently in the custody of the Boulder, Colorado Police Department in the County of Boulder, State of Colorado, there is now located certain property, to-wit:

"1. Any and all narcotics and dangerous drugs as defined by the applicable Colorado Statutes, the possession of which is illegal.

"2. All implements, articles, paraphernalia, papers and records pertaining to or which would be evidence of the illegal possession, use or sale of narcotics or dangerous drugs.

"Certain property \* \* \* the possession of which is illegal, or which would be material evidence in a subsequent criminal prosecution, and the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That affiant is an officer of the Boulder Police Department, Boulder, Colorado, currently assigned to the investigation of narcotic and dangerous drug violations.

"That at 7:20 p.m. on May 20, 1970, officers of the Boulder Police Department executed a search warrant at room No. 250 at the Royal Inn, 770 28th St., Boulder, Colorado. Affiant was informed by Officer Harry Coles of the Boulder Police Department who assisted in the execution of that warrant that quantities of hashish, marijuana, and LSD were seized in that search.

"That at 2:00 a.m. on May 22, 1970, Miss Linda Brown, the manager of the Royal Inn, 770 28th St., Boulder, Colorado, pointed out an individual in the hall of the Royal Inn as one of the persons who occupied room No. 250 of the Royal Inn during the present rental of the room, during

which the search above was conducted. Immediately following the identification to affiant by Miss Linda Brown of this individual who she stated she knew by the name of 'Randy', affiant placed the individual, later identified as Randolph Jay Glaubman, under arrest for possession of narcotics.

"In the course of the arrest affiant took from Randolph Jay Glaubman a purse carried in his left hand. Upon examination the purse was found, by affiant, to contained [sic] suspect LSD. A presumptive field test indicated that the substance is in fact LSD. In addition affiant seized from the pocket of the individual a leather pouch containing a quantity of marijuana.

"During the course of the arrest affiant seized from the right hand of Randolph Jay Glaubman a tan imitation leather satchel secured with cloth garment belt. This satchel is presently in the custody of affiant in the Detective Division of the Boulder Police Department, Boulder, Colorado."