545 P.2d 1053 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Arthur Juan ANAYA and Thomas Eloy Morales, Defendants-Appellants.
No. 74-394.
Colorado Court of Appeals, Div. I.
October 9, 1975.
Rehearing Denied November 28, 1975.
Certiorari Denied March 1, 1976.
*1055 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, State Public Defender, Carol L. Gerstl, Deputy Public Defender, Denver, for defendant-appellant Arthur Juan Anaya.
R. Dennis Lambrecht, Colorado Springs, for defendant-appellant Thomas Eloy Morales.
Not Selected for Official Publication.
ENOCH, Judge.
This is an appeal by co-defendants Arthur Anaya and Thomas Morales from convictions of second degree burglary, first degree assault, second degree assault, aggravated robbery and rape. Arthur Anaya was also convicted of deviate sexual intercourse by force. Both defendants allege a lack of probable cause for their arrest, and in addition, Morales argues that the trial court erred in denying his motion for a separate trial, admitting testimony of a third party concerning admissions of his co-defendant, denying his motion under Crim.P. 35(b) alleging ineffective assistance of counsel, and refusing a requested instruction on a missing witness. We affirm.
The following facts were developed at trial. On January 9, 1974, two Spanish-American males gained entry into the Colorado Springs home of Felix and Petra Martinez, apparently through an unlocked upper story window. At some time after midnight, Mr. and Mrs. Martinez awoke to see a shadow of a man standing in the bedroom. The man stated that he was looking for Mary Ann, their granddaughter who resided with them. Upon being told that Mary Ann was spending the night out of town, the man walked into the dining room and requested to use the telephone, saying his car had broken down. During the telephone conversation the name of "Chata" or "Chato" was used.
While the first man was talking on the telephone, a second man walked in carrying a tire iron. The second man demanded money and after giving him the money she had in her wallet, Mrs. Martinez began to struggle with the second man, attempting to take away the tire iron. The situation thereupon rapidly developed into a violent and brutal attack in which the crimes *1056 charged against the defendants were inflicted upon Mr. and Mrs. Martinez. After the assailants left, Mrs. Martinez telephoned the police.
When the officers arrived she described the assailants as one tall, "skinnier Mexican" male and one shorter, "heavier Mexican" male. One of the officers then telephoned the Martinez' granddaughter Mary Ann, who, when queried whether she knew anyone who would fit the above description, stated it could only be Tommy Morales and Mike Anaya (brother of the codefendant), and that if a third party was involved it would be "Chato."
Shortly thereafter Officer Dirscherl, who had not been at the Martinez' home, was directed by the police dispatcher to go to the Anaya home and attempt to apprehend Thomas Morales and Anthony Michael Anaya. Officer Dirscherl and another officer went to the Anaya home, completed the arrests ordered, and, because of events occurring there plus his knowledge of the earlier events, Officer Dirscherl also arrested Arthur Anaya. At the police station blood was observed on the clothing of Arthur Anaya and Thomas Morales and this clothing was seized. Michael Anaya was subsequently released and charges were brought against Arthur Anaya and Thomas Morales.
A jury found Arthur and Thomas guilty of all charges, and they were sentenced to a term of not less than 30 years and not more than 40 years in the state penitentiary on five counts, and an indeterminate sentence on the second degree assault, all to be served concurrently.

DEFENDANT ARTHUR ANAYA
Arthur Anaya's sole argument on appeal is that no probable cause existed for his arrest, and hence the trial court should have granted his motion to suppress the bloodstained clothing. Section 16-3-102(c), C.R.S.1973, allows a police officer to arrest a person without a warrant when:
"He has probable cause to believe that an offense was committed and has probable cause to believe that the offense was committed by the person to be arrested. An arrest warrant should be obtained when practicable."
"Probable cause" consists of:
"a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious man to believe that an offense has been or is being committed by the person arrested." Gallegos v. People, 157 Colo. 173, 401 P. 2d 613.
In this case the actual arrest was made by Officer Dirscherl, acting on information received from a fellow officer. Defendant Anaya does not dispute that probable cause can be measured by the knowledge of the fellow officers who ordered the arrest. Whiteley v. Warden of Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306. However, Arthur Anaya argues that since there was no order given for his arrest, Officer Dirscherl himself must meet the criteria for probable cause.
Probable cause may be measured by the knowledge possessed by the police as a whole, including the facts and circumstances known personally to the arresting officer. People v. Nanes, 174 Colo. 294, 483 P.2d 958. Here, before entering the Anaya home, Officer Dirscherl had been informed that a rape and robbery had occurred earlier that same evening, and had been given the names and descriptions of the two suspects. When the officers entered the Anaya home, they saw Thomas Morales and Arthur Anaya fully clothed, and Michael Anaya partially clothed. Upon the arrest of Thomas Morales and Michael Anaya, Mrs. Anaya, mother of Michael and Arthur, stated that Michael had been home all evening. Michael was taken outside to the police vehicle where he stated, "I didn't have anything to do with this. It was my brother Arthur, and Tommy Morales that just came home, and I don't want to get involved in this incident *1057 at all." Upon hearing this the officer checked Thomas Morales' auto, discovered the hood was still warm, and then arrested Arthur Anaya.
Arthur Anaya argues that the statements by Mrs. Anaya and Michael did not implicate him. However, in light of the information and orders he had received, Officer Dirscherl was entitled to assume that there was sufficient probable cause to believe Thomas Morales was implicated in the crimes, and these statements, particularly Michael's indicating Arthur and Thomas had just returned together, would allow a cautious man to believe that Arthur was also involved in the rape and robbery.
Arthur Anaya argues further that even if Michael is considered to be an informant there must be evidence that the informer is credible and the information reliable under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. U. S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. In People v. Wright, 56 Ill.2d 523, 309 N. E.2d 537, the Illinois court faced a similar argument. A defendant, being arrested on an identification supplied by a victim of the crime, stated he was not involved in the robbery, but knew who was. He then stated that Wright was involved, and that the guns used in the robbery could be found in Wright's apartment. The court concluded that since the officer's information had tied the informer to the crime, his identification was not only reliable, but particularly significant since the victim had already identified him. The court distinguished Aguilar, supra, and Spinelli, supra, as cases where paid informants provided information. Here, besides being free of the suspicion that attaches to statements of a paid informant, Michael's statements were corroborated by the still-warm auto, and by Mrs. Anaya's statements. Therefore, there was probable cause for the arrest of Arthur Anaya and the trial court properly denied the motion to suppress the evidence seized as a result of that arrest. People v. Clark, 173 Colo. 129, 476 P.2d 564.

DEFENDANT THOMAS MORALES
Thomas Morales also alleges that no probable cause existed for his arrest. This arrest may be upheld on the basis of the fellow officer rule only if the officers who ordered the arrest possessed sufficient reliable information to create probable cause.
Morales acknowledges that Colorado has recognized that a different standard applies to a citizen informer than a paid, undisclosed informer. People v. Glaubman, 175 Colo. 41, 485 P.2d 711. There can be no question that Mrs. Martinez' information falls within this citizen informer rule. However, Morales argues that the identification supplied by the granddaughter, Mary Ann, must be tested by the requirement of Aguilar and Spinelli, supra, since she did not actually witness the crime. We do not believe that Glaubman, supra, turned on whether the citizen had actually witnessed the cime, but rather on the inherent reliability of one who has knowledge concerning the crime, volunteers information without pay, and testifies at trial. See People v. Schamber, 182 Colo. 355, 513 P.2d 205. However, even assuming the Aguilar-Spinelli test applies, the requisite probable cause was present. Under these cases the officer would have to have knowledge of (1) the underlying circumstances from which the informer drew his conclusion and (2) the underlying circumstances from which the officer could conclude the informer was reliable. Mary Ann's identification of defendants met these criteria.
Morales admits that the second prong of the test was met in that the officers could consider Mary Ann to be a reliable informant. He argues, however, that there is no evidence that the officer knew from what underlying circumstances Mary Ann drew her conclusion that Thomas Morales and Michael Anaya were the assailants.
It is clear from the record that the officer who telephoned Mary Ann told her that her grandparents had been robbed and assaulted, described the assailants as one *1058 taller, "skinnier Mexican" male and one shorter, "heavier Mexican" male, explained that one had asked for her and one had used the name "John Martinez" when addressing the other. She immediately responded "that could only be Tommy Morales and Mike Anaya." The officer could reasonably assume that she drew her conclusion from the information and description he had supplied. And, in fact, she did testify at the hearing on the motion to suppress evidence that her conclusion was based on the fact that these were the only two persons she knew who matched that description and who would be asking for her.
In addition, the officer who contacted Mary Ann testified that she volunteered that if a third party were involved, it would probably be "Chato." It was after this telephone conversation that the officers compared notes and discovered that the name "Chato" had been used by the shorter, heavier male while he was talking on the telephone. Considering the totality of information possessed by the police at this time, they would have been remiss in not ordering the apprehension of Thomas Morales.
Defendant Morales points out that even if probable cause is found to have existed, a warrantless arrest may be effected only where there exist sufficient exigent circumstances to make it impracticable to obtain a warrant. People v. Moreno, 176 Colo. 488, 491 P.2d 575. He alleges that no exigent circumstances existed in this case. However, even with the prompt arrival of the police, defendant Morales had already had time to take a shower, and possibly remove incriminating blood stains which might have been present. Further delay might well have resulted in the cleaning or destruction of the blood and semen stained clothes which were seized from the defendants after their arrest. This need to preserve evidence is sufficient exigent circumstances to validate a warrantless arrest based on probable cause. People v. Duleff, 183 Colo. 213, 515 P.2d 1239. In addition, assuming arguendo that the officers entered the Anaya home uninvited, as contended by defendants but denied by the officers, such a means of effecting the arrest would be validated by these exigent circumstances. Duleff, supra.
Thomas Morales next assigns as error the denial of his motion for severance and the admission into evidence of incriminating statements made by co-defendant Arthur Anaya to a third party. These arguments are interrelated and can be dealt with together. Crim.P. 14 provides for discretionary severance if the trial court finds that the defendant will be prejudiced by joinder and for mandatory severance if the court finds that the prosecution probably will present evidence against one joint defendant, other than reputation or character testimony, which would not be admissible in a separate trial of the moving defendant. Hence, severance would have been required if the statements made by co-defendant Arthur Anaya to Michael Anaya which implicated Thomas Morales were inadmissible against Thomas Morales. Neither defendant testified at trial.
The statements complained of occurred in a telephone conversation between Arthur Anaya and Michael Anaya which took place during the early morning hours of January 9, 1974, and was overheard by Mrs. Anaya. Both Mrs. Anaya and Michael Anaya testified that Arthur called and requested that Michael come and pick "them" up as "they" had had car problems. When asked where he was calling from, Arthur stated that he was at Mary Ann's, and "Tommy had gone crazy." Each testified that they heard a woman's voice in the background saying "get out."
The trial court held an in camera hearing and determined that a conspiracy existed and that the statements were admissible. Defendant Morales acknowledges that there is a well recognized exception to the hearsay rule for extra-judicial statements of co-conspirators. Under this exception, before the admissions of one co-defendant *1059 are admissible against another co-defendant, three conditions must be met: (1) The existence of the conspiracy and the member's participation therein must be established by independent evidence, (2) the statements must have been made during the pendency of the conspiracy, and (3) the statements must have been made in furtherance of the conspiracy. See Solander v. People, 2 Colo. 48.
The defendant admits that there is no question that the telephone conversation was allegedly made while the acts complained of were occurring. He argues, however, that the independent proof of a conspiracy and evidence of the furtherance of the conspiracy are insufficient. We disagree.
Proof of a conspiracy will generally be circumstantial and there need be no actual agreement. Smaldone v. People, 103 Colo. 498, 88 P.2d 103. A judge is not required to find that the evidence proves a conspiracy beyond a reasonable doubt, but only that a prima facie case of conspiracy exists. Carbo v. U. S., 314 F.2d 718 (9th Cir.). Here, at the time of the in camera hearing on this issue, the defendants had been identified in court by one victim, and there was evidence that one defendant probably climbed up to an unlocked second story window, entered, and then admitted the other defendant through the side door. As the court stated in Abeyta v. People, 156 Colo. 440, 400 P.2d 431:
"To decide that this evidence does not meet the test laid down in Smaldone, supra, would be to hold that the trial court should have ruled as a matter of law that the evidence showed no more than that the four perpetrators of the robbery, individually, determined to rob the store involved, and that, by some strange force of circumstance, each entered the store to further his individual intent at the same time as did each of the others and independent of any of the others. To state the proposition is to show its utter tenuousness."
The evidence in this case is sufficiently strong to have established a prima facie case of conspiracy.
There being an extant conspiracy, a telephone conversation occurring during the pendency of the conspiracy asking for transportation from the scene of the crime is obviously designed to further the conspiracy. In addition, the further declaration that "Tommy's gone crazy" is sufficiently spontaneous that it carries its own indicia of reliability and should not have been segregated out of the conversation. See Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213. Having found that the trial court did not err in finding the statements of the co-defendant Arthur Anaya admissible (against Thomas Morales) under the co-conspirators exception to the hearsay rule, we conclude that a mandatory severance was not required.
Nor do we find an abuse of discretion in denying the motion for separate trials based on alleged prejudice to the defendant. The defendant relies on Eder v. People, 179 Colo. 122, 498 P.2d 945 in which the court reversed the trial court's refusal to grant severance. However, Eder, is distinguishable from the present case on its facts. In Eder, the co-defendants were being tried for possession of a narcotic drug which had been discovered in a room shared by the defendants. Each defendant argued that the hashish belonged not to him, but to the other defendant. The court pointed out that antagonistic defenses do not always demand a severance. Furthermore, in that case the denial of possession by each defendant was necessarily directed specifically at the other, since both occupied the same room. Also, the defendants there were, in fact, really being tried for separate crimes of possession.
In contrast, here, the defendants were being tried for joint crimes arising from the same transaction. Also, their defenses were not really antagonistic; instead of accusing their co-defendant of being one *1060 of the perpetrators of the crime, each denied his own participation and attempted to raise a doubt concerning the noninvolvement of Michael Anaya. The additional arguments raised by Eder, supra, are relevant to a case where every inference which strengthens the case against one codefendant necessarily weakens the case against the other co-defendant. This is not such a case. We, therefore, find no clear abuse of discretion in refusing the defendant's motion for severance.
Defendant Thomas Morales also argues that the trial court erred in denying his motion for a new trial premised on alleged ineffective assistance of counsel. He argues that the failure of his trial counsel to seek a continuance to insure the presence of a defense witness, who had been subpoenaed, was gross error and amounts of a violation of his Sixth Amendment right to counsel. The trial court held a Crim.P. 35(b) hearing on this question of adequate representation and found counsel's decision not to seek a continuance was one of strategy and judgment.
Errors of judgment and trial strategy have been held not to amount to an infringement of the constitutional right to effective counsel. Evans v. People, 175 Colo. 269, 486 P.2d 1062. Furthermore, there is no violation of such rights if the attorney refuses to call a witness as requested by the defendant. Martinez v. People, 173 Colo. 515, 480 P.2d 843.
During the course of the trial the attorney raised several inferences that a certain witness would be called to contradict the identification testimony. The attorney expected to present a witness who would testify that Mr. Martinez had told him that Thomas Morales was not one of the attackers and that the tall one had a moustache (which Mr. Morales did not have) and that Mrs. Martinez had told him she identified Thomas because she did not like Mary Ann dating him. This evidence would have corroborated the testimony of other witnesses and would have been used to support the attack on Mrs. Martinez' credibility. On the last day of trial the attorney discovered that the witness had suffered a breakdown and had been hospitalized in the Colorado State Hospital. He learned that the witness had been hospitalized before the defense rested, but did not discover the reason for the hospitalization until after he had rested his case for Mr. Morales but before final argument.
The attorney testified at the Crim.P. 35(b) hearing that the witness was the key to his defense and yet he made no move for a continuance or to reopen his case and request a continuance until the witness would be available. The trial court found that, rather than indicating a gross lapse on the part of an experienced criminal trial attorney who had competently represented this client during the rest of the trial, this inaction by counsel indicated that he was exercising his professional judgment in deciding that the continuance would be more harmful than the missing witness' testimony would be beneficial, especially considering that the witness had been committed to the state hospital for a mental problem. This finding is amply supported by the evidence produced at the Crim.P. 35(b) hearing. As was stated in Dolan v. People, 168 Colo. 19, 449 P.2d 828:
"The constitutional right to the assistance of counsel is not a guarantee against mistakes of strategy or exercise of judgment in the course of a trial as viewed through the 20-20 vision of hind-sight following the return of a verdict in a criminal case."
The final error alleged is the refusal of the court to give an instruction that the missing witness was unavailable through no fault of the defendant. However, the failure to give an instruction which amounts to nondirection rather than misdirection is not error. Smaldone v. People, supra.
Judgment affirmed.
COYTE and BERMAN, JJ., concur.