## No. 27124

### The People of the State of Colorado v. Gary Lee Glasener

(550 P.2d 851)

Decided June 7, 1976.

Stuart A. Van Meveren, District Attorney, Donald E. Johnson, Jr., Deputy, for plaintiff-appellant.

Harden and Napheys, Charles S. Bloom, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

This is an interlocutory appeal by the People from a ruling suppressing statements made by the defendant Glasener and also suppressing weapons seized from his home pursuant to a consent search. After a hearing, the trial court made a finding that no probable cause existed to arrest the defendant, and consequently, the statements and weapons, which were the products of that arrest, were ordered suppressed as evidence at trial. In our view, the trial court erred by not finding that probable cause existed under the evidence presented. We therefore reverse its suppression order.

At the suppression hearing, the arresting officer testified to the following events which led to the defendant's arrest. He was contacted in person at the police station by a man who identified himself only as "Jim." Jim stated that two men had offered to sell him guns, and that he himself had tried to find buyers for them. One of the men had boasted that the guns were stolen. Jim told the officer that within the last fifteen minutes he had seen and handled the weapons in the apartment of one of the two men. Two of the weapons he described as sawed-off shotguns. He then informed the officer that the men planned to sell these guns from their car that afternoon. Jim described in detail the location and address of the apartment, and the location and description of the car, including its make, model, color and type of license plate. He also gave a description of the two men.

The officer testified that the informant accompanied him when he drove to the apartment and that the purpose of this trip was to verify the informant's description of the apartment, its location, the vehicle, and its location. As they proceeded down the alley behind the residence in an unmarked police cruiser, the informant pointed to two men running out of the apartment house and indicated that they were the men who possessed the weapons and who had tried to sell them to him. The men, who matched the informant's earlier description, entered a car, which was identical to the one described by the informant, and drove away. The officer followed and radioed for assistance from other police officers to stop the car. The officer admitted that his purpose for ordering the car stopped was to arrest the occupants and to search the car because he believed at the time that the vehicle contained stolen firearms. While the other officers checked the license of the driver who was the defendant, the arresting officer, with the informant still in his car, walked past the defendant's car and noticed a shotgun shell lying on the rear floorboard of the car.

Defendant was placed under arrest and orally advised of his *Miranda* rights. His car was searched but no weapons were found. He then consented to a search of his apartment and made incriminating statements to the police.

The search of defendant's apartment uncovered numerous firearms, including two sawed-off shotguns. These firearms were traced to a sporting goods store that had been allegedly burglarized the day before in

Loveland, Colorado. The defendant was charged with second-degree burglary, conspiracy to commit theft, and theft.

█ To establish probable cause in this case on the basis of the aforementioned informant's tip, the *Aguilar-Spinelli* test requires that the informant's basis of knowledge and his reliability be established. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See also, People v. Montoya*, 189 Colo. 106, 538 P.2d 1332 (1975), and *People v. Trontell*, 188 Colo. 253, 533 P.2d 1124 (1975).

The defendant does not question the adequacy of the informant's basis of knowledge because the informant personally saw and inspected the guns in defendant's apartment, and heard the boast that the guns were stolen and that they intended to sell them from their car within the hour. He successfully argued to the trial court, however, that the informant was unreliable as a matter of law. The trial court made the finding that the police officer "made no attempt to determine the credibility of the informant or the reliability of the information given by him prior to the apprehension and arrest of the defendant." The defendant offered no evidence at the hearing, and other findings by the trial court indicate that it obviously gave credence to the testimony presented by the People. That testimony demonstrates in several ways the reliability of this informant.

Though the informant cannot be regarded as a citizen-informant because he did not reveal his identity or was not a fortuitous eyewitness to a crime, he, nonetheless, has some of the indicia of reliability of a citizen-informant. *Compare People v. Hubbard*, 184 Colo. 225, 519 P.2d 951 (1974), and *People v. Glaubman*, 175 Colo. 41, 485 P.2d 711 (1971). The informant voluntarily came to the police station, with no suspect motivation, such as, a promise of leniency on pending criminal charges or a promise of payment for his services. He also lacked the insulation of an anonymous phone caller as in *People v. Williams*, 186 Colo. 72, 525 P.2d 463 (1974), and, in fact, was willing to declare his accountability by accompanying the police officer to the defendant's apartment, pointing out the suspects, and remaining with the police during the defendant's arrest.

The informant's reliability was further buttressed by the statements he made to the police against his penal interest. *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *People v. Trontell, supra; DeLaCruz v. People*, 177 Colo. 46, 492 P.2d 627 (1972). Again, this case does not fall squarely within those decisions permitting reliability to be demonstrated by statements against one's penal interest because the informant's statements alone would not yet warrant a prosecution against him nor sustain a conviction against him. Nevertheless, his admission that he was contacted to sell stolen goods and that he made some attempt to locate buyers for them would sufficiently draw the suspicions of the police to his possible "fencing" activities as to make his

statements truly against his interests.

Finally, many of the precise details of his tip were corroborated by the police officer. *Compare People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974), and *People v. Trontell, supra.*

■ The totality of all these factors warrant, as a matter of law, a conclusion that the informant was reliable. His corroborated information gave the officer probable cause to arrest the defendant for the possession and sale of stolen and/or illegal guns. Under the unique facts of this case, we also hold probable cause did not fully develop until after the officer had corroborated many of the details of the tip and after the suspects had hurriedly driven off in their car, which very possibly contained the weapons. The officer was justified by the exigencies here to make a warrantless arrest.[1]

A concluding statement in the defendant's brief indicates that he is also maintaining that the defendant may not have intelligently and knowingly consented to the search of his apartment. His motion to suppress though does not specially challenge the lawfulness of his consent and the trial court's finding includes a statement which implicitly holds that the consent was proper under the evidence here. We therefore see no basis for remanding this case for a more specific finding on the matter of the defendant's consent to search his apartment.

For the foregoing reasons, we hold that the finding of no probable cause for the arrest of this defendant is erroneous. Therefore, we reverse the trial court's suppression ruling.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. I would affirm the ruling of the trial judge at the suppression hearing. Viewing the record as a whole, I would uphold the ruling of the trial judge. The prerogative for deciding whether or not probable cause was established is within the domain of the trial judge. *People v. Trujillo*, 179 Colo. 428, 500 P.2d 1176 (1972); *see also United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975). Unless the trial judge has abused his prerogative, this court should not overturn his ruling. *People v. Trujillo, supra.*

The sole evidence which the prosecution possesses was obtained as a product of an arrest which was not supported by probable cause. *People v. McPherson*, 191 Colo. 81, 550 P.2d 311. The only conclusion to be

---

[1]We therefore intimate no view in this case whether section 16-3-102, C.R.S. 1973, requires an arrest warrant when practicable despite *People v. Tangas*, 190 Colo. 262, 545 P.2d 1047 (1976). *Compare United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

drawn from the record in this case is that the investigating officers predicated probable cause to arrest the defendant solely upon the statements of an unidentified informant whose credibility was never established. The prosecution failed to lay the foundation for the arrest which was the basis for our sustaining the ruling in *DeLaCruz v. People*, 177 Colo. 46, 492 P.2d 627 (1972).

The second or "veracity" prong of the *Aguilar-Spinelli* test requires that the prosecution must establish that the informant was credible or his information reliable. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *People v. Montoya*, 189 Colo. 106, 538 P.2d 1332 (1975); *see* Moylan, *Hearsay and Probable Cause; An Aguilar and Spinelli Primer*, 25 Mercer L. Rev. 741 (1974). This informant had established no prior "track record" by previously supplying the police with reliable information. He was an "unknown quantity." The majority attempts to meet the "veracity" prong of the *Aguilar-Spinelli* test through a curious mixture of the "citizen-informer" doctrine and the "statement against penal interest" concept.

The citizen-informer rule was announced and adopted in *People v. Glaubman*, 175 Colo. 41, 485 P.2d 711 (1971), where we held that "a citizen who is identified by name and address and was a witness to criminal activity cannot be considered on the same basis as the ordinary informant." *See also People v. Hubbard*, 184 Colo. 225, 519 P.2d 951 (1974). The underlying assumptions supporting the rule were articulated in *People v. Trontell*, 188 Colo. 253, 533 P.2d 1124 (1975), where we stated:

"The information provided by the citizen-informer is given this preferred position primarily because the informant is *not protected behind a cloak of secrecy*, and also because *his sole motivation* in reporting the criminal activity which he observed *is that of a good citizen who is acting in the best interests of society. . . .* In other words, the ordinary citizen, in reporting a crime which he viewed, is not considered with the same skeptical eye which is cast upon the unidentified informant who in most cases is part of the 'criminal milieu'. . . ." (Emphasis added.)

In my opinion, the mysterious informant, who refused to give his name and was known only by the name "Jim," did not impart the aura of credibility or reliability traditionally associated with the citizen-informant. In fact, the police officer admitted that he did not know the informant's name at the time the suppression hearing was held. He also said that he did not know whether the informant was reliable until he searched the apartment.

The majority opinion constitutes a marked departure from precedent by dismissing the requirement that the citizen-informant be identified not only by name, but also by address. Indeed, a "cloak of secrecy" seems to

surround the informant in this case, crumbling one of the primary assumptions supporting the citizen-informant rule. Prior to the defendant's actual arrest, the police had no basis for believing that the informant was a "good citizen" acting solely in "the best interests of society." *People v. Trontell, supra.* In fact, the information supplied by the informant indicated that he was possibly part of the "criminal milieu," a fact which diminished his credibility as a responsible citizen motivated solely by the best interests of society. In short, the unidentified informant, who some called "Jim," was not a citizen-informant under the rule announced in *People v. Glaubman, supra.*

The majority buttresses the "veracity" prong of the *Aguilar-Spinelli* test by hypothesizing that the informant made a statement against his penal interest when he stated that he made an attempt to locate buyers for the allegedly stolen guns found in the defendant's apartment. No evidence suggests that the informant possessed the requisite criminal intent to receive stolen firearms. In short, the informant's penal interest was simply not involved in the statement that he made to the police. *See United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *People v. Montoya, supra.* Even if the statement had some bearing on the informant's penal interest, that does not automatically lend credibility to the informant's accusations against the defendant. *See United States v. Harris, supra; People v. Trontell, supra* (dissenting opinion). Any personal risk which the informant might have created by making the alleged statement was substantially reduced by the fact that he remained for all intents and purposes an "anonymous" informant — without a name or address.

Finally, the trustworthiness of the informant cannot be satisfied by a lengthy catalogue of details related by the informant to the police officers. Although some of the details related by the informant were later corroborated by the police officers, "there was no verification of the facts relating to alleged criminal activity of the defendant." *People v. Montoya, supra.* In fact, the police presumed that the evidence of criminal activity would be found in the automobile, though the informant had alleged that the evidence could be found in the defendant's apartment. The sound precedent affirmed in the case of *People v. Montoya, supra,* should not be disturbed. The majority opinion melts and mixes the elements of separate doctrines into an unstable compound. The law thus created is fraught with uncertainty and unpredictability.

Since the arrest was made without a warrant, the prosecution had the burden of proof in establishing probable cause. *DeLaCruz v. People, supra.* The trial judge made a finding that the prosecution had failed to establish the "veracity" prong of the *Aguilar-Spinelli* rule and that the police did not have probable cause to arrest the defendant. Inasmuch as the arrest was made without probable cause, the evidence which was

seized at the defendant's apartment and the subsequent confession obtained from the defendant should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).