### No. C-1067

### The People of the State of Colorado v. Charles M. Edmonds

(578 P.2d 655)

Decided May 15, 1978.                              Rehearing denied May 30, 1978.

Dale Tooley, District Attorney, Thomas P. Casey, Chief Deputy, Brooke Wunnicke, Chief Appellate Deputy, for petitioner.

Carroll & Bradley, John S. Carroll, for respondent.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Charles M. Edmonds was convicted by a jury in county court of second-degree tampering for "making unauthorized connections" with a Mountain States Telephone and Telegraph Company (Mountain Bell) telephone wire, a class 2 misdemeanor. Section 18-4-506, C.R.S. 1973. On appeal to the Superior Court, the judgment of conviction was

reversed. We granted the district attorney's petition for a writ of certiorari to consider issues raised by the petition. We reverse the judgment of the Superior Court.

In January of 1974, defendant, who was then a state legislator, rented an apartment in Denver. Shortly thereafter, a legislative lobbyist for Mountain Bell informed its security department of rumors that the defendant had connected a telephone in his apartment without the permission of Mountain Bell. The security department performed an electronic search for unauthorized telephones on the telephone line of the apartment manager, but could not detect any irregularities.

Several days later, the lobbyist informed the security department that the defendant's unauthorized telephone connection was still a matter of common knowledge at the capitol. This time Mountain Bell dispatched a repairman to look for unauthorized wires. At the cable connection for the apartment building where the defendant resided, the repairman found that the cable wire connected to the manager's telephone had been rewired to connect it to the defendant's apartment as well. Mountain Bell notified the police.

After the police examined the unusual wiring, they connected a tape recorder to the manager's telephone line. The tape recorder detected and recorded a conversation on that line made outside the manager's apartment by a person who identified himself as Edmonds.

Two days later, a search warrant for the defendant's apartment was issued and executed. The search revealed several electronic tools and a working telephone, which had not been connected in the usual manner.

These items were introduced at trial. Also, at trial, a Mountain Bell employee testified that after searching the company's records he was unable to find any record authorizing telephone service to the defendant's apartment.

The Superior Court reversed the defendant's conviction for several reasons which will be discussed.

## I.

The Superior Court ruled that the second-degree tampering statute involved here is unconstitutionally vague and overbroad, in violation of the Fourteenth Amendment of the United States Constitution and of Article II, Section 25 of the Colorado Constitution. The district attorney challenges this ruling. The statute (section 18-4-506, C.R.S. 1973) provides:

"A person commits the crime of second degree tampering if he tampers with property of another, with intent to cause injury, inconvenience, or annoyance to that person or to another, or *if he makes unauthorized connections with property of a utility.*" (Emphasis added.)

In support of the Superior Court's ruling, the defendant argues that the word "unauthorized" is vague because it fails to indicate by whom a connection should be authorized. This argument persuaded the Superior

Court. The defendant also argued before the Superior Court and here that there is no statutory definition of the word "connection" and since its common meaning is so broad, the statute is rendered unconstitutionally overbroad. The Superior Court did not address this contention. We are not persuaded by either argument.

Statutes are presumed to be constitutional, and one who attacks a statute has the burden to prove its invalidity. *People v. Albo,* 195 Colo. 102, 575 P.2d 427 (1978); *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975); *People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975). It is well established that if a statute fairly describes prohibited conduct so that persons of common intelligence can readily apprehend the statute's meaning and application, it is valid and not void for vagueness. *E.g., People v. Albo, supra; Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972).

We believe that this statute fairly describes the prohibited conduct in terms sufficiently understandable so that persons who wish to comply with it may do so. *See People v. Heckard,* 164 Colo. 19, 431 P.2d 1014 (1967). The statute does not employ undefined technical terms, but uses ordinary words which a person of common intelligence can understand. *See People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972).

Although the statute does not specify who the authorizing agent is, the mere fact that the statute enumerates "unauthorized" as an element of the offense reasonably notifies every person that authority is required from someone. Here, there was no evidence that the defendant made any attempt to obtain permission or to find out whose permission he needed. More importantly, we believe that a person of common intelligence would not doubt that the statute requires the permission of the utility which owns the property. We will not strain to inject doubt into the meaning of those words. *See United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *People v. Albo, supra.*

The wording of the second-degree tampering statute resembles the wording of the theft statute, section 18-4-401, C.R.S. 1973. In that statute, exercising control over property "without authorization" has been interpreted to mean that the owner of the property, or a person in possession of the property with the owner's consent, has not given the actor permission to exercise control over the property. *People v. Diaz,* 182 Colo. 369, 513 P.2d 444 (1973). The theft statute has been held to be constitutional. *People v. Lewis,* 180 Colo. 423, 506 P.2d 125 (1973); *Howe v. People, supra.*

We need not rule on the overbreadth argument because the defendant does not have standing to raise it. Unless a challenged statute proscribes acts which overlap constitutionally protected conduct, we will not consider overbreadth arguments made by persons whose conduct is clearly within the terms of the statutory prohibition. *People v. Stage,* 195

Colo. 110, 575 P.2d 423 (1978); *People v. Garcia, supra. See also Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The words "unauthorized connections" were clearly intended to reach this situation, in which a person connected to the property of a utility an apparatus which procured the services of the utility without cost. This kind of "free speech" is not within the scope of the protections afforded by the First Amendment, and the defendant does not have standing to challenge the statute.

Relying on *People v. Vinnola, supra,* and *People v. Quinn,* 190 Colo. 534, 549 P.2d 1332 (1976), the Superior Court also concluded that the second-degree tampering statute was constitutionally invalid because it deprived the defendant of due process of law by permitting Mountain Bell to decide if a connection is unauthorized, thereby allowing the utility's actions to be determinative of the criminality of the conduct. The *Vinnola* analogy, later reaffirmed in *Quinn,* is misplaced.

In *Vinnola,* we invalidated a "bad check" statute which made the writing of a check on insufficient funds criminal depending on whether or not the bank honored the check. The bank's decision determined whether the writing of the check was criminal. Here, the authorization of the utility which owns property is required *before* a person connects anything to the property. Thus, the actor knows beforehand whether his conduct is authorized and, consequently, whether it is criminal. The criminality of the act does not depend upon the subsequent action of a third party, as did the criminality of passing bad checks in *Vinnola* and *Quinn.*

■ The ruling of the Superior Court that the second-degree tampering statute is unconstitutional is therefore reversed.

## II.

■ The defendant argues that he was the victim of Mountain Bell's selective enforcement of the second-degree tampering statute, and therefore the Superior Court's reversal of his conviction was justified. The Superior Court did not rule on this argument. We disagree with the defendant's contention.

Evidence indicated that in the first six months of 1974 Mountain Bell detected 554 unauthorized telephone connections in Colorado. However, Mountain Bell only complained to the police about the defendant's violation and only he was prosecuted. Apparently Mountain Bell has a policy of not prosecuting its subscribers if they attempt to connect additional equipment without permission. All 554 of the detected violations referred to above were such subscriber violations. Further, there was testimony that when Mountain Bell detects an unauthorized connection by a non-subscriber, it routinely turns the case over to the police.

## III.

The defendant also argues that the affidavit supporting the search warrant was insufficient under the citizen-informer rule of *People v.*

*Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971), because it failed to list the addresses of the citizen-informers and it did not specify any criminal activity which was witnessed by a citizen-informer. Apparently the Superior Court agreed that the affidavit was insufficient.[1]

▮▮▮▮ A sufficient affidavit must set forth underlying circumstances which enable a magistrate independently to judge the validity of the affiant's conclusions, and which indicate that the informer is credible and that the information is reliable. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *People v. Glaubman, supra.* Where the citizen-informer rule applies, the informer is presumed to be credible and the information is presumed to be reliable. *People v. Glaubman, supra.*

The citizen-informer rule applies here. Information from three citizens was used in the affidavit for the search warrant executed on the defendant's apartment. The Mountain Bell repairman who detected the cross connection between the manager's phone and the defendant's apartment was identified by name and place of employment. Another Mountain Bell employee, who stated that Mountain Bell records revealed that no telephone service was authorized for the defendant's apartment, was similarly identified. Finally, the apartment manager, who stated that the defendant was the sole tenant of the apartment, that there was no telephone equipment in the apartment when he moved in, and that she had not given him permission to tap her phone, was identified by name, address and telephone number.

We believe that these citizens were identified sufficiently to satisfy the interests expressed in *Glaubman.* There we stated with reference to a hotel manager who informed the police about a drug deal:

"She made her information known to the police, and the police verified the information which was available. She was identified by name and is not on the same footing as the common informant who seeks to remain nameless and hidden and barters and sells information to the police. . . .

"Our view . . . is that the citizen-informer, adviser, or reporter who acts openly to see that our laws are enforced should be encouraged, and his information should not be subjected to the same tests as are applied to the information of an ordinary informer. [Citations omitted.]" 175 Colo. at 50-51.

---

[1] The Superior Court concluded that evidence of a working telephone in the defendant's apartment was fruit of the poisonous tree and should have been excluded. It stated that the wiretap was illegal and an invasion of privacy and it also noted the absence of the address of the civilian informers on the affidavit for a search warrant. Either purported defect, or both, could have been the basis of the Superior Court's conclusion.

Similarly, the information of the citizens named in the affidavit here should be accepted as reliable. *See also People v. Glasener,* 191 Colo. 114, 550 P.2d 851 (1976); *People v. Trontell,* 188 Colo. 253, 533 P.2d 1124 (1975) (dictum).

The defendant also claims the affidavit is insufficient because none of the informers witnessed any criminal activity. It is true that none of the witnesses named in the affidavit saw the defendant actually connecting the wires to the telephone in his apartment. However, each informer observed circumstances which, when considered together, appeared clearly to be elements of criminal activity. This information established probable cause to believe that the defendant had made an unauthorized connection, and therefore the search warrant was supported by a sufficient affidavit.

## IV.

The Superior Court held and the defendant argues that the telephone and the tape recording should have been suppressed because both were obtained as the result of an impermissible invasion of privacy — the police wiretap of the manager's telephone. We do not agree.

First, the telephone was obtained by execution of a search warrant. The affidavit supporting the search warrant did not mention the taped conversation of the defendant which was obtained through use of the manager's telephone and there is no indication in the record that any of the information in the affidavit was obtained as a result of the tape recording. The evidence of the working telephone was obtained by independent sources, which we have already approved.

The recording itself was admissible. The defendant could not have had a valid expectation of privacy while speaking on his extension of the manager's line. By connecting his telephone to the manager's line, the defendant evidenced unconcern for his privacy, as the manager could listen to his conversations by simply picking up her telephone. The police department tap was placed on the manager's telephone with her consent. *See United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Further, defendant argues that the electronic check run by Mountain Bell to detect unauthorized equipment on their lines was illegal and that subsequently obtained evidence should have been suppressed as fruit of that illegal search. We need not address the merits of this argument as the electronic search was fruitless. None of the subsequently obtained information was acquired as a result of this electronic search.

## V.

The defendant argues that the trial court erred in giving Instruction No. 2 which reads as follows:

"A person commits the crime of second degree criminal tampering if he makes unauthorized connections with the property of a utility.

"If, after considering all of the evidence, you find that the prosecution has established, beyond a reasonable doubt, that the defendant acted in such a manner so as to satisfy all of the above element, [sic] at or about the date and place stated in the complaint, you should find the defendant guilty of second degree tampering. If you do not so find, you should find the defendant not guilty."

The defendant's tendered instruction enumerated the elements of the offense one by one. The Superior Court held that the tendered instruction should have been given.

While we believe that the defendant's tendered instruction was superior in some respects to the instruction actually given, we do not agree that giving Instruction No. 2 was reversible error. The wording of Instruction No. 2 is the same as the language used in the statutory definition of the offense and does not differ substantially from the instruction tendered by the defendant. We note also that the defendant's tendered instruction included an element of fraud which is not a stated element in the statute. *See Salas v. People,* 181 Colo. 321, 509 P.2d 586 (1973). We do not believe that the obvious typographical error in setting forth the word "element" instead of "elements" could have confused the jury into believing that the prosecution only had to prove one of the elements of the offense.

The remaining contentions of the defendant are without merit and require no discussion.

The judgment of the Superior Court is reversed and the cause is returned to it with directions to affirm the county court judgment.