The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Ross HENRY, Defendant-Appellee.

No. 81SA160.

Supreme Court of Colorado, En Banc.

Aug. 4, 1981.

Warwick Downing, Dist. Atty., Cortez, for plaintiff-appellant.

J. Gregory Walta, State Public Defender, Deborah S. Waldbaum, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Justice.

Pursuant to C.A.R. 4.1 the People appeal a suppression ruling of the district court. Having ruled that the police lacked probable cause to arrest the defendant, the court suppressed as the fruits of his illegal arrest

the results of scientific tests conducted on him after his arrest and his post-arrest statements to the police. The court also suppressed various items of evidence seized from an automobile in which the defendant was riding as a passenger on the ground that the illegal arrest of the vehicle's owner invalidated the owner's subsequent consent to search. We conclude that the court misapprehended the legal principles pertinent to a proper resolution of the search and seizure issues and we reverse.

## I.

The defendant, Ross Henry, is charged in two separate criminal actions pending in the district court of Montezuma County. In the one case (Criminal Action No. 81CR4) he is charged with the following offenses based on an episode that occurred during the late evening and early morning hours of December 14 and 15, 1980, in Cortez, Colorado:[1] one count of assault in the third degree[2] against Kern Washington, Jr.; one count of assault in the first degree[3] against Samuel Adam McIntosh; and separate counts of aggravated robbery[4] and assault in the first degree[5] against Jackie Keams.[6] In another case (Criminal Action No.

81CR6) the defendant is charged with burglary of the building[7] of Tierra Equipment, Inc., in Cortez on December 11, 1980, and felony theft[8] of several items of property during the burglary including a .357 Rugar Magnum revolver and holster, two yellow flashlights and a Polaroid camera.[9] In both cases the defendant filed motions to suppress which were consolidated for hearing before the district court. The evidence elicited at the suppression hearing furnishes the factual predicate for the issues raised on this appeal.

At approximately 11:50 p. m. on December 14, 1980, Officer Nowlin of the Cortez Police Department heard a gunshot originating from an alley behind the Hotel Cortez and immediately went there to investigate. At approximately the same time Sergeant Marston, who was patrolling the town in a police vehicle, received a report of an assault at the hotel and he also responded to the scene. When the sergeant entered the hotel he observed Officer Nowlin already there talking to a man who was bleeding from the face and who appeared to be the victim of the assault.[10] Officer Nowlin told Sergeant Marston that Ross Henry was the assailant and that Henry

1. Charged jointly with the defendant in Criminal Action No. 81CR4 were David Schonberger and Dennis Vallejos, both of whom were arrested contemporaneously with the defendant under circumstances fully described in the opinion. The defendant filed a motion for severance and, upon the district attorney's confession of the motion, the charges against the defendant were severed from those against Schonberger and Vallejos.

2. Section 18–3–204, C.R.S. 1973 (1978 Repl. Vol. 8). This count alleged that the defendant unlawfully and with criminal negligence caused bodily injury to the victim by means of a deadly weapon, a pool cue.

3. Section 18–3–202(1)(c), C.R.S. 1973 (1978 Repl.Vol. 8).

4. Section 18–4–302(1)(a), C.R.S. 1973 (1978 Repl.Vol. 8). It was alleged that the defendant perpetrated the aggravated robbery by means of a .357 Rugar pistol. By separate information the defendant was charged with theft on December 11, 1980, of a .357 Rugar Magnum revolver.

5. Section 18–3–202(1)(d), C.R.S. 1973 (1978 Repl.Vol. 8).

6. The information also charges the defendant with habitual criminality, section 16–13–101, C.R.S. 1973 (1978 Repl.Vol. 8), on the basis of three prior felony convictions.

7. Section 18–4–203, C.R.S. 1973 (1978 Repl. Vol. 8). David Schonberger is also a defendant in Criminal Action No. 81CR6 but the defendant was severed from Schonberger.

8. Section 18–4–401, C.R.S. 1973 (1978 Repl. Vol. 8).

9. The information in Criminal Action No. 81CR6 also includes habitual criminal charges against the defendant.

10. Although the suppression testimony does not identify this person by name, it reasonably may be inferred that he was Kern Washington, Jr., whom the defendant allegedly assaulted with a pool cue as charged in count one in 81CR4.

left in a dark Pontiac automobile with two other men, one of whom was David Schonberger. Marston knew the defendant and Schonberger by sight.

At approximately the same time another officer, Detective Shethar, was informed at his home of an assault and shooting at the hotel. Upon Shethar's arrival at the hotel, Sergeant Marston repeated to him the information received from Officer Nowlin. Marston drove to the local hospital to interview a gunshot victim, Samuel McIntosh, who stated that "he had been shot down by the hotel."

Several police officers engaged in a lookout for the Pontiac automobile and maintained radio contact with each other. At about 1:00 a. m. on December 15, Detective Shethar, who knew the defendant and Schonberger, received a radio report that the Pontiac had been seen heading east on Main Street in Cortez. Shethar posted his vehicle on Main Street and moments later spotted the Pontiac with the three suspects in it, the defendant occupying the right rear passenger seat. He advised other officers of the vehicle's location, followed it and, with the assistance of Sergeant Marston and others, blocked it off in a parking lot. The defendant was placed under arrest along with Schonberger, who also was a passenger in the vehicle, and the driver, Dennis Vallejos. All the suspects were advised of their *Miranda* rights [11] at this time.

After handcuffing the suspects and placing them in a police vehicle, Sergeant Marston looked inside the Pontiac. With the aid of a flashlight he saw a .357 Magnum revolver on the floor of the right rear passenger compartment and seized the weapon. It was determined that the driver, Dennis Vallejos, was the owner of the Pontiac. He executed a written consent to search the vehicle at the scene of the arrest. [12] Various items of evidence were recovered including a bottle of beer, a plastic bottle of 7-Up, a towel and washcloth, and a shirt, pants and gloves.

After the search of the vehicle the three suspects were transported to the Montezuma County Jail. There a search of the defendant's clothing produced thirteen live rounds of .357 Magnum ammunition. At approximately 2:00 a. m. on December 15 the police sought to administer a paraffin test on the defendant's hands. Initially the defendant refused to cooperate, stating that he had been shooting a gun all week, [13] but later agreed to the test. About 10:00 a. m. on that day an investigator for the district attorney's office advised the defendant of his *Miranda* rights and the defendant acknowledged that he understood them and agreed to make a statement. He admitted being in a fight at the Hotel Cortez the

11. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

12. The document, entitled Permission to Search, was admitted at the suppression hearing and provided as follows:

"I, Dennis Ronnie Vallejos, have been informed by James P. Shethar and Les Beavers who made proper identification as (an) authorized law enforcement Officer(s) of the Cortez Police Dept. of MY CONSTITUTIONAL RIGHT not to have a search made of the premises and property owned by me and/or under my care, custody and control, without a search warrant. Knowing of my lawful right to refuse to consent to such a search, I willingly give my permission to the above named Officer(s) to conduct a complete search of the premises and property including all buildings and vehicles, both inside and outside of the property located at Circle K Food store[,] vehicle described as a maroon

1967 Pontaic [sic] XM2899 4 door executive. The above said Officer(s) further have my permission to take from my premises and property, any letters, papers, materials or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation.

"This written permission to search without a search warrant is given by me to the above Officer(s) voluntarily and without any threats or promises of any kind, at 1:08 A.M. on this 15 day of December 1980, at Circle K Food store."

13. The trial court did not address this statement in its suppression ruling because the defendant raised no issue concerning its admissibility. The record of the suppression hearing indicates that it was a spontaneous remark by the defendant rather than a response to interrogation.

evening of December 14 and firing a weapon sometime that day.[14]

During the afternoon of December 15 Dennis Vallejos executed a second consent to search the Pontiac automobile and additional items of evidence (a small piece of wood, a box, a bar of soap and a tube of toothpaste) were recovered from the automobile. The police learned from Vallejos that he had picked up the defendant on the evening of December 14 at the home of Kathy Cross in Cortez. Officers visited her house at 2:40 p. m. on December 15. Upon entry they observed the holster, which was stolen in the December 11 burglary of Tierra Equipment, Inc., lying in open view on a couch. A Polaroid camera from the same burglary was lying on the floor directly inside the front door. Ms. Cross told the officers that the defendant lived there with her prior to his arrest and she executed a written consent to search the home. In addition to the holster and the Polaroid camera, the officers recovered a flashlight and glove belonging to Tierra Equipment, Inc., and several food items taken in another burglary.[15]

The court concluded that the police lacked probable cause to arrest the defendant and suppressed the results of the paraffin test as the fruit of his illegal arrest. The court also ruled that, although "the defendant appeared to understand his rights and waived them," his custodial statements to the police likewise were the product of his illegal arrest. The .357 Magnum revolver was suppressed for the reason that it was seized without a warrant in the absence of exigent circumstances. The court also suppressed the items of evidence obtained from the two consent searches of the Pontiac automobile on the ground that the illegal arrest of the vehicle's owner, Dennis Vallejos, without probable cause, in-

validated his consent and any ensuing search. The court denied the motion to suppress the evidence taken from the search of Ms. Cross' home, ruling that her consent was valid. That part of the court's ruling which deals with the search of the Cross home is not before us at this time and we do not address it.

## II.

We first consider the trial court's determination that there was a lack of probable cause to arrest the defendant, thereby resulting in the suppression of the paraffin test and the defendant's custodial statements. The gist of the trial court's ruling is that the prosecution failed to establish the trustworthiness of the information related by Officer Nowlin to Sergeant Marston and, therefore, the application of the fellow officer rule could not be considered in the judicial assessment of probable cause. We conclude that the trial court erred in its resolution of the probable cause issue.

■■■■ The constitutional requirement of probable cause may be established by hearsay information. *E. g., Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Lucero v. People*, 165 Colo. 315, 438 P.2d 693 (1968). Here the suppression evidence was undisputed that Sergeant Marston heard a report of an assault at the hotel and arrived there directly. Also, it was undisputed that Marston saw Officer Nowlin talking to a man who was bleeding from the face and appeared to be the victim of the assault and that Nowlin immediately told Marston of Ross Henry's identity as the assailant and his flight from the scene with David Schonberger and a third person in a dark Pontiac automobile. This undisputed evidence vir-

---

**14.** Two similar interviews of the defendant were conducted on December 16, both of which were preceded by *Miranda* warnings. In each instance the defendant acknowledged that he understood his rights and elected to discuss the case with the interrogating officers. The record does not indicate the nature of the statements made by the defendant during these interrogations.

**15.** On the basis of the presence of the food items in Ms. Cross' home the defendant was charged in a third case with the burglary of the building from which the food was stolen. However, the evidence suppressed by the court does not relate to this case.

tually compels the inference that the victim initially told Nowlin the very information which Nowlin conveyed to Marston.

■ In the context of probable cause, the type of showing necessary to establish the trustworthiness of information supporting an arrest will vary with the source of the information. Where the information originates from an anonymous informer, the informer's tip must allege sufficient facts to establish the basis for his knowledge of criminal activity and also must allege adequate circumstances to justify the officer's belief in the informer's credibility or the reliability of his information. *E. g., United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas, supra; People v. Montoya,* 189 Colo. 106, 538 P.2d 1332 (1975); *People v. Peschong* 181 Colo. 29, 506 P.2d 1232 (1973). Ordinarily, courts are more concerned with veracity when the source of information is a person from the criminal environment acting from motives of self-interest, such as plea or sentence concessions, the payment of money, or revenge. It is generally agreed that a comparable showing of trustworthiness is not needed when the information comes from an ordinary citizen. 1 *W. LaFave, Search and Seizure* § 3.4 at 586–618 (1978).

■ Commencing with *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971), we consistently have held that information furnished by a citizen-witness should not be subjected to the same tests applicable to the anonymous police informer. When the source of the information is a citizen-informer who witnessed a crime and is identified, the citizen's information is presumed to be reliable and the prosecution is not required to establish either the credibility of the citizen or the reliability of his information. *E. g., People v. Saars,* 196 Colo. 294, 584 P.2d 622 (1978); *People v. Edmonds,* 195 Colo. 358, 578 P.2d 655 (1978); *People v. Hubbard,* 184 Colo. 225, 519 P.2d 951 (1974). The citizen-witness rule applies equally to a citizen-victim. It is simply unreasonable to presume, in the absence of any contrary evidence, that the ordinary citizen who fortuitously becomes a victim of a crime is likely to offer false or untrustworthy information to the police.

Admittedly, there is no evidence in the record indicating that Officer Nowlin had already determined the victim's name when Nowlin told Marston that the defendant was the assailant and had fled with others in a dark Pontiac automobile. Conversely, however, there is no evidence that the victim chose to hide behind the cloak of anonymity and to withhold his identity. It is one thing for the source of the information to be anonymous even to the police, but quite another for that person to be known but merely unidentified by name. *See* 1 *W. LaFave, supra* at § 3.4, p. 598. Officer Nowlin's investigation immediately followed his hearing a gunshot report directly behind the Hotel Cortez. His direct encounter with the purported victim at the crime scene mirrors the very type of situation that spawned the citizen-informer rule in the first place and constitutes justification for its application here. *See, e. g., United States v. Patterson,* 495 F.2d 107 (D.C.Cir.1974); *State v. Lindquist,* 295 Minn. 398, 205 N.W.2d 333 (1973). The trustworthiness of the information naming the defendant as the assailant being sufficiently established, there was probable cause to arrest the defendant on the basis of Officer Nowlin's report to Sergeant Marston.[16]

16. The suppression testimony considered in its totality furnishes additional support for probable cause. Supplementing Marston's observations of the victim bleeding from the face at the crime scene is his determination from personal observation at the hospital that a shooting had taken place involving another victim. All this information was relayed to those officers looking for the Pontiac vehicle. Sergeant Marston and Detective Shethar, both of whom participated in the defendant's arrest, knew the defendant and Schonberger by sight. Detective Shethar's sighting of the dark Pontiac automobile on Main Street with the defendant and Schonberger riding inside as passengers served to lend additional credence to the original report about the defendant's participation in the crime and flight from the crime scene.

The court also erred in its refusal to consider the fellow officer rule in its probable cause determination. The fellow officer rule provides that an arresting officer need not have personal information amounting to probable cause but may rely on a dispatch or communication from another officer in effecting the arrest. In such a case, if the communication from the fellow officer was itself based on trustworthy information amounting to probable cause, the arrest will be sustained. *See, e. g., Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *People v. Baca,* Colo., 600 P.2d 700 (1979); *People v. Nanes,* 174 Colo. 294, 483 P.2d 958 (1971). The report in this case from Officer Nowlin to Sergeant Marston was based on a trustworthy source, namely the citizen-victim, and that report was dispatched to other officers who properly acted on it in making the arrest.

Since the trial court erred in its resolution of the probable cause issue, the suppression of the paraffin test and the defendant's custodial statements as the fruit of the arrest was improper. Although the court did not address the suppression of the thirteen rounds of ammunition recovered from the defendant at the jail immediately after his arrest, that evidence stands on the same footing as the other derivative evidence and its seizure was constitutionally proper as incident to the lawful arrest of the defendant.

### III.

We next consider the suppression of the .357 Magnum which Sergeant Marston observed by using a flashlight to look into the rear passenger compartment of the Pontiac immediately after the defendant was arrested. The court determined that "[a]t the time the gun was seized by Sergeant Marston, there were no exigent circumstances requiring such action since all defendants were in custody and the car was in absolute control of the police" and, in the absence of a search warrant or a valid consent, the seizure of the revolver was illegal. The trial court's ruling is contrary to controlling judicial precedent.

In *People v. Waits,* 196 Colo. 35, 580 P.2d 391 (1978), we held that when an officer legitimately makes an investigatory stop of a vehicle, he may look through a car window and use a flashlight in observing objects lying inside the vehicle. *See also, e. g., People v. Haggart,* 188 Colo. 164, 533 P.2d 488 (1975); *People v. Teague,* 173 Colo. 120, 476 P.2d 751 (1970). Seeing a revolver inside the car under such circumstances provides justification for its immediate seizure in the interest of the officer's safety. *See, e. g., Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here the police had more than reasonable suspicion to make an investigatory stop. They had probable cause to arrest the defendant for assault. The lawful arrest of a person justifies a contemporaneous warrantless search of the person and the immediately surrounding area. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *see also, e. g., United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The observation of the .357 Magnum revolver in this case occurred moments after the defendant was taken into custody and while he was still at the scene of the arrest.

The propriety of seizing the revolver from the Pontiac automobile is controlled by the recent pronouncement of the United States Supreme Court in *New York v. Belton,* —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d —— (1981). There the Court held that when the occupants of an automobile were arrested for unlawful possession of marijuana, the contemporaneous search of the passenger compartment of the vehicle and the seizure of contraband from a jacket located therein were constitutionally permissible:

> "While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the in-

terior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggest the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary item.' *Chimel, supra,* 395 U.S. supra, at 763 [89 S.Ct. at 2040]. In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton, supra,* —— U.S. at ——, 101 S.Ct. at ——, 69 L.Ed.2d at 774–75.

The *Belton* case mandates the reversal of the court's suppression of the .357 Magnum revolver.

### IV.

■ In suppressing the items taken by the police in the course of the two consent searches of the Pontiac automobile, the court first determined as a preliminary matter that the defendant had standing to challenge the search by reason of his occupancy of the vehicle and next reasoned that the unlawful arrest of all defendants vitiated the consent of Dennis Vallejos, the owner of the vehicle.[17] The trial court's ruling is flawed in two respects. It erroneously accords the defendant a legitimate expectation of privacy in another's automobile by virtue of his mere presence therein as a passenger and it improperly permits the defendant to claim vicariously the violation of the Fourth Amendment rights of another.

■ Before a defendant is entitled to an order of suppression, he first must establish that the challenged search violated a privacy interest which the Fourth Amendment is designed to protect. Here the defendant neither asserted nor established a property interest in the Pontiac automobile or the objects taken therefrom. Contrary to the trial court's ruling, the defendant's mere occupancy of the vehicle as a passenger, without more, is insufficient to provide him a constitutionally cognizable expectation of privacy in the area searched or the objects seized. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see, e. g., Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *People v. Spies,* Colo., 615 P.2d 710 (1980); *People v. Hampton,* Colo., 603 P.2d 133 (1979); *People v. Pearson,* 190 Colo. 313, 546 P.2d 1259 (1976). Regardless of the degree to which the discovery of these objects in the automobile might implicate the defendant on the pending charges, neither the evidentiary significance of the objects seized nor the nature of the pending charges automatically confers on him the standing necessary to the successful assertion of a Fourth Amendment claim. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *People v. Spies, supra.*

■ The court's suppression of the results of the consent searches was bottomed on the lack of probable cause to arrest Dennis Vallejos. Fourth Amendment

---

**17.** The trial court's ruling states that "the record having disclosed an unlawful arrest of all defendants, Vallejos included, the consent of the defendant Vallejos is regarded as involuntary." Because the evidence was uncontroverted that Vallejos voluntarily executed the consents to search his vehicle, we interpret this ruling to mean that the consent searches were the fruits of Vallejos' unlawful arrest.

The issue of voluntariness is separate and distinct from the question whether a consent search is the fruit of an unlawful arrest. The test of voluntariness is whether the consent is "the product of an essentially free and unre-

strained choice by its maker." *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973). An unlawful arrest per se does not render a subsequent consent involuntary, although the consent might well be invalid under the derivative evidence doctrine. *See People v. Lowe,* Colo., 616 P.2d 118 (1980). However, even if the trial court intended to find Vallejos' consents involuntary in the constitutional sense, our analysis of the standing issue, as set forth in the opinion, similarly would prohibit the defendant from seeking suppression of evidence obtained as the result of those involuntary consents.

rights, however, are personal and the suppression of the products of an unconstitutional search can be urged only by one whose rights were violated, not by those who are aggrieved solely by the admission of the damaging evidence, even if they be codefendants. *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *see also People v. Knapp*, 180 Colo. 280, 505 P.2d 7 (1973).

The ruling is reversed and the cause is remanded to the district court for further proceedings.